---

## BELLINGER *v.* SHAFER and others.

The provision in the revised statutes, that when the purposes for which an express
· trust shall have been created, shall have ceased, the estate of the trustees shall
also cease ; applies to trusts created before those statutes took effect. ·

So of the provision that persons who by any grant are entitled to the actual posses-
sion and the receipt of the rents and profits of lands, in law or in equity, shall be
deemed to have a legal estate therein commensurate with their beneficial inter-
est, where no power of disposition or management over the same remains in trus-
tees.

S. and his wife conveyed a farm to trustees, *habendum* to them and their heirs and
assigns, for the support, maintenance and education of three grandsons and four
granddaughters of the grantors, until the latter respectively arrived at full age,
unless they were sooner married, on which the use and objects of the trust as to
them should cease ; and to the further use and behoof in fee simple to the three
grandsons ; with a power of sale to the trustees in the meantime.

*Held,* that the trust continued for the benefit of the whole seven, until all the grand-
daughters were married or of full age ; upon which event the interest of the
latter ceased, and the objects of the trust ceased also, together with the power
conferred on the trustees; and the three grandsons thereupon became seised of
an absolute legal estate in fee.

The father of the beneficiaries, with the trustees consent, made permanent improve-
ments on the farm, while their tenant ; the trust containing no authority for the
same, *held* that no allowance could be made for such improvements, as against
the beneficiaries and those claiming under them.

It was also held, that the trustees had no lien upon the farm after their estate in it
ceased, for any unpaid commissions or charges.

Albany, Dec. 20, 1844 ; January 10, 1845.(*a*)

THE bill in this cause was filed to foreclose a mortgage exe-
cuted by Jerome Shafer to the complainant, upon an equal undi-
vided third part of a farm of one hundred and sixty-seven acres,

---

(*a*) A special term was held by the assistant vice-chancellor, at the capitol in the
city of Albany, on the third Monday of December, 1844.

situate in the town of Cobleskill in the county of Schoharie, dated May 27th, 1839.

The defendants, besides Shafer, were the trustees named in a deed of the whole farm, executed by Peter Shafer and Angelica his wife, on the 16th day of February, 1829. By that deed, the grantors in consideration of natural love and affection for the seven infant children of their son Jacob, as also for the better maintenance, support and livelihood of the seven children, conveyed the farm to Adam V. Shafer, Peter Shafer, Junior, and George Spraker, and to their heirs and assigns. The *habendum* clause was in these words :

" To have and to hold the said lot, piece or parcel of land, hereby granted and conveyed, or mentioned or intended so to be, with their and every of their appurtenances, unto the said Adam V. Shafer, Peter Shafer, Junior, George Spraker, their heirs and assigns, for the support, maintenance and education of them the said Levina Shafer, Jane Ann Shafer, Almira Shafer, Caroline Shafer, Jerome Shafer, Jethro Shafer, and James Shafer, until they the said daughters respectively arrive to the age of twenty-one years, unless they be sooner married, upon which contingency happening, the use and objects of this deed of trust, as to them, shall cease; and to the further use and behoof in fee simple, to the said Jerome Shafer, Jethro Shafer, and James Shafer, their heirs and assigns for ever ; and to be conveyed, used, applied, or disposed of, in the whole, or a part thereof, from time to time, as the said trustees, in their discretion, may deem expedient and proper ; but for no other use, trust, intent or purpose whatsoever."

·　After which followed a covenant of warranty.

The trustees executed the trust, and during a great portion of the time, permitted the father of the beneficiaries to occupy the farm and apply the proceeds to their support. He made permanent improvements on the farm, by the erection of buildings and otherwise, with the trustees assent.

The youngest of the granddaughters became twenty-one years of age in 1838.

The defendants put in an answer, insisting that Jerome Shafer, at the time of the execution of the bond and mortgage, had

no estate, right, title or interest in the farm ; but that the same remained vested in the trustees, upon a continuing and existing trust. They also insisted that the farm was liable for the additions so made thereon by the father of the beneficiaries ; and that Jerome Shafer's interest in the farm, if he had any, was subject in equity to the support of his parents, (who were destitute,) in respect of such additions.

At the hearing, they alleged that the consideration of the bond and mortgage was illegal and void. Also that the trustees had a lien upon the farm for their unpaid charges and commissions.

The cause was heard on pleadings and proofs.

*H. Hamilton*, for the complainant.

*H. Loucks*, for the defendants.

The Assistant Vice-Chancellor.—The trust in the deed executed by Peter Shafer to Spraker and others, was undoubtedly valid.

I am equally clear in my conclusion as to its effect. The trustees were to hold the land for the support, maintenance and education of the seven grandchildren, *until* the four granddaughters respectively arrived to the age of twenty-one years or should be married ; and *upon that event,* to the further use and behoof in fee simple of the three grandsons.

The object of the trust was, to devote the farm to the support of the seven children until all the daughters were married or had become of mature age ; and after that, the sons were to have the farm in fee. The deed expressly declares, that when the daughters were thus disposed of, the use and objects of the trust as to them, should cease ; and the powers conferred upon the trustees are limited to the use, intent and purpose of the deed.

When an estate is limited to a person in fee simple, as this estate was, after the granddaughters became of age ; there can be no further occasion for a trustee to manage it. Nor can there be a trustee, where the beneficiary has an absolute estate in fee simple. The objects of the trust, both express and inferrible, terminated with the interest of the granddaughters. The power

of management and disposition given to the trustees, was for the objects and purposes of the trust, and only commensurate with them. The power therefore ceased to exist, when those objects were accomplished.(a)

The revised statutes provide that when the purposes for which an express trust shall have been created, shall have ceased, the estate of the trustees shall also cease. (1 R. S. 730, § 67.) They also declare, that every person who by virtue of any grant, is entitled to the actual possession of lands and the receipt of the rents and profits thereof in law or in equity, shall be deemed to have a legal estate therein, of the same quality and duration, as his beneficial interest. Trusts, in which the trustees have an actual power of disposition or management remaining, were excepted. (Ibid. 727, § 47, 48.)

These sections apply to trusts created before the revised statutes took effect. (*In the matter of De Kay*, 4 Paige, 403; and see *Eckford* v. *De Kay*, 8 ibid. 89, 94; S. C., *on appeal*, 26 Wend. 29.)

According to the statute and these authorities, Jerome Shafer became seised of an absolute legal estate in fee in one undivided third of the farm, when his youngest sister became of age in 1838.

It does not affect the argument that he was then under age. Any actual control of the land would necessarily be exercised by his guardian during his minority, and he could no more dispose of it then, than he could have done previous to 1838, while the estate of the trustees continued.

The complainant's mortgage, executed after he became of full age, is therefore a valid lien on Jerome Shafer's third part of the farm.

I perceive nothing in the answer which impeaches the consideration of the mortgage. The testimony produced for that object must hence be disregarded.

---

(a) See to this effect, *Adams* v. *Adams*, in the Queen's Bench, January 31 1845; 9 London Jurist Rep. 300; and see also, *Barker* v. *Greenwood*, 4 Mees. & Welsby, 421, 429.

Nor can I make any provision for commissions or charges which may be due to the trustees. Their whole estate in the land terminated when the youngest granddaughter became of full age. They had no further right to control or possess it, and they can have no lien upon it for such charges.

The same difficulty exists in respect of the improvements and erections made by the father of Jerome Shafer, with the trustees consent. The trust authorized nothing of the kind. If the trustees had themselves made such expenditures, and in entire good faith, they could not have compelled the grandsons to pay for them on their receiving the estate. (*Green* v. *Winter*, 1 J. C. R. 26, 39.) And their consent did not clothe the father with any better right than their own. This may be a great hardship upon the father, but it is one which cannot be avoided, according to well settled principles which govern this court as well as courts of law. One man cannot become a creditor of another, without the express or implied assent of the latter. Jerome Shafer, if he had been so disposed, might have given to his father a valid lien for the value of the improvements which the father made. No such lien was given, and the complainant's mortgage is the only lien upon the premises which this court can recognize.

Jerome Shafer's liability to support his parents, is not a lien either at law or in equity.

The complainant is entitled to the usual decree for foreclosure and sale, and the payment of his debt and costs; and a decree for any deficiency, against the mortgagor.