FIELD AND ANOTHER *v.* WILBUR AND OTHERS.*

[IN CHANCERY.]

*Effect of Answer as Evidence. Trustee.*

The rule as to the amount of evidence necessary to overcome an answer responsive to the bill, commented upon and explained.

Husband buys a farm and has it deeded to his wife in trust for their children. Husband and wife hire orators to build a barn thereon, and inform them of the true state of the title. Orators build the barn, relying in some measure on the trust property for their pay. Husband is sick, and does not expect to live long, and so informs orators, and soon after the barn is commenced, returns, with his family, to his home in Georgia, and dies insolvent. Wife thereafter promises to pay orators for building the barn. No administration is here taken on the husband's estate. *Held,* that the expenses for building the barn were a proper charge on the trust property.

APPEAL from the Court of Chancery, Orleans County. The bill alleged,

That on August 21, 1868, Aaron Wilbur, of Savannah, Georgia, bought a farm in Derby, for $3000, and procured it deeded to his wife, Mary E. Wilbur, in trust for their children; that in the summer of 1869, Wilbur and his wife were desirous of building a barn on the farm that season, and saw the orator, Solomon M. Field, a mechanic and builder, several times about building it, and afterwards sent for him to come to the farm, where they were

---

*Decided at the General Term in October, 1875.

then stopping, to see about it, and that he went, and there talked with both of them together about building the barn, and about the plan and location thereof, and that they both then and there agreed with him to build it on a site then designated by them, according to a plan then agreed upon ; that the orators were to furnish all the material, and build the barn that fall, and that the said Wilbur and wife were to pay the orators therefor when the same was completed ; that the orators, in pursuance of said agreement, soon commenced the erection of said barn, but did not fully finish it that fall on account of the inclemency of the weather, but completed it the next summer, and therein expended in material and labor the sum of $935, which remained wholly unpaid ; that at the time said agreement was made, Wilbur and wife informed the said Solomon of the true state of the title of said farm, and that the orators then relied upon a lien upon the barn and premises for their pay for building the barn, and that before the same was completed, they filed in the town clerk's office a written statement, asserting their lien thereon ; that at the time said agreement was made as aforesaid, said Wilbur was in ill health, and apprehended that he might not live long, and told the orators so, and was then about to return to Savannah, to spend the winter, and did soon leave with his family for his home in Savannah, was taken worse on the way, and died soon after reaching home ; that his estate was insolvent, and that administration had never been taken thereon in this state ; that in the fall of 1871, the defendant, Mary E. Wilbur, came to Derby and saw the orators about their account for building the barn ; that she examined the account, admitted that it was just, and agreed to pay it at an early day, and to see the orators again about it before she returned to Savannah, but did not, and that the orators had heard nothing from her since concerning it. *Prayer*, that a master be appointed to ascertain the sum due the orators for building said barn, and that defendants be decreed to pay the orators the sum thus ascertained to be due, and in default thereof, that such sum be made a charge on said premises, and the equity of redemption of the defendants therein be foreclosed.

The answer denied all the allegations of the bill charging the defendant Mary E. Wilbur with being a party to the agreement for building said barn, and alleged,

That she was not in any manner party thereto as trustee or otherwise, and denied that she sent for said Solomon to come to the farm on the occasion when said agreement was made, or that she ever did anything that would reasonably lead the said Solo-

mon to infer that she was in any manner a party to said agreement; and denied that she ever promised the orators that she would pay them for building said barn, but admitted that she once told them she would see about it; alleged that the orators did not rely upon a lien on said barn and premises, but on the contrary thereof that they brought an action of book-account against the said Mary, which is still pending, to recover their account; denied that the orators ever filed a valid lien on said premises in the town clerk's office, and alleged that they had not perfected such pretended lien by bringing suit and obtaining judgment as required by statute.

The answer was traversed, and the testimony of the orators taken.*

*J. T. Allen*, for the orators.

The trustee in this case was appointed by the donor, Aaron Wilbur, who had a legal right to purchase the real estate in question, and have it conveyed to his wife in trust for his minor children, and as against all persons except his creditors at the time of said purchase, it was good. After such a conveyance, he had no legal or equitable title in the premises. *Garfield* v. *Hatmaker*, 15 N. Y. 475.

It is the duty of a trustee to use reasonable diligence to protect and benefit the trust estate. If the trustee has not the funds in his hands to defray the expense, he may charge such expense upon the trust estate. *Noyes* v. *Blackman*, 6 N. Y. 569; *Vose* v. *Foster*, 7 Am. Law Rev. 686; *Hyde* v. *Haywood*, 2 Atk. 126; *Wilkinson* v. *Wilkinson*, 2 Sim. &. Stu. 237. A trustee is bound to keep up and sustain the trust estate, and must be allowed for such expenses. *M. E. Church* v. *Jaynes*, 1 Johns. Ch. 450; *Mory* v. *DeRottenham*, 6 Johns. Ch. 52, 67; Perry Trusts, ss. 473, 476, 477, 485. A trustee having acted in good faith, and for the manifest benefit of the *cestui que trust*, must be protected by a court of equity. *Fountains* v. *Pellett*, 1 Ves. 337; *Thompson* v. *Brown*, 4 Johns. Ch. 629; *Root* v. *Yeoman et al.* 15 Pick. 488.

*No papers were furnished me from which the disposition of the case in the Court of Chancery can be determined, except what may be inferred from the reversal of the decree by the Supreme Court. REPORTER.

The orators having expended their money for the manifest benefit of the *cestuis que trust*, by request of the donor and the trustee, and by their directions, are entitled to greater protection than the trustees and guardian who have expended the trust funds of their *cestuis que trust*. A trustee should manage trust property as he would his own, and he is held to the same diligence in the management thereof. 2 Story Eq. ss. 1275, 1276. Mr. Wilbur, being the donor, had a right at the time of creating the trust, to direct how the estate should be managed, and what improvements should be made. *Parsons et al.* v. *Winslow*, 16 Mass. 367. When the rents of a trust estate are increased in consequence of improvements made by the trustee, the *cestuis que trust* must elect to either allow the trustee the expense of such improvements, or be deprived of the increase of rent obtained by means thereof; but this question would more properly arise in a suit between the trustee and the *cestuis que trust*. But if the improvements are necessary, and are judiciously made, the trustee can charge the trust estate with such improvements. *Rathburn et ux.* v. *Colton et al.* 15 Pick. 485, 486; *Root* v. *Yeoman, supra.* A mortgagee in possession of mortgaged premises holds the land in trust for the mortgagor. In such a case the courts always allow for permanent improvements.

The orators have a lien for the improvements made by them upon the trust estate by the common law. There are liens recognized in equity whose existence is not known nor obligation enforced at law, and in respect to which courts of equity exercise a very large and salutary jurisdiction. 2 Story Eq. 1217. Equitable liens are such as exist in equity, and of which courts of equity alone take cognizance; that is, it is not a property in the thing itself, nor does it constitute a right of action for the thing; it more properly constitutes a charge upon the thing. 2 Story Eq. 1215. Courts of equity have always held to the doctrine of contribution and lien for repairs and improvements upon trust estates and joint tenants. 2 Story Eq. 1234, 1236. In many cases they proceed upon the ground of some express or implied agreement as to the repairs and improvements. But courts of equity have not confined their jurisdiction to compensation or lien for repairs

and improvements to cases of agreement, but have extended it to cases where the party making the repairs or improvements acted *bona fide,* and where there has been a substantial benefit conferred to the trust property. 2 Story Eq. 1237, 1239 ; *Root* v. *Yeoman, Rathburn* v. *Colton, supra.* By the terms of the statute, real estate becomes chargeable and holden for the amount due a mechanic for labor and material furnished upon it, from the time the copy of the contract and declaration are lodged in the town clerk's office. It extends to estates of married women where they consent to such repairs and improvements. The lien attaches against the legal owner of the premises.

The orators are entitled to a decree for the rents and profits of the trust estate, and in case that is not sufficient to satisfy their claim in a reasonable time, then they are entitled to a decree of sale or a decree of foreclosure of the equity of redemption of the trustee and the *cestuis que trust* in the premises. 2 Story Eq. 1216 a, 1216 c.

*W. D. Crane* and *Edwards & Dickerman,* for the defendants.

The averment of the bill being denied by the answer, there is not sufficient evidence to overcome the answer. Where the material facts upon which the orator relies in his bill are denied in the answer, the rule is well settled that something more than the testimony of one witness is required to sustain the averments of the bill ; what is deemed equal to the testimony of two witnesses is required. *Shattuck* v. *Gay et al.* 45 Vt. 87.

By virtue of an express statute in this state, mechanics and material men are entitled to a lien or preference in the payment of debts out of the houses and buildings so erected, and to the land, to a greater or less extent, on which they are erected. The time in which such a lien has existence is limited by statute, and the mode of perfecting that lien is there pointed out. No lien under the statute was gained by the orators—it was never perfected. No lien exists touching the subject-matter of this suit independent of the statute or some contract express or implied by which the lien is created. And this is so both in law and in equity.

It is not claimed that there was any contract by which a lien

was created, that is, it was not agreed by the parties that there should be a lien. Nor can it be said that a lien attached from any previous dealings between the parties whereby a contract to that effect might be implied. Nor is there any custom by which a lien can have existence touching this matter. In *Green* v. *Farmer*, 4 Burr. 2214, Lord MANSFIELD enumerates cases where liens attach. 1st, Where there is an express contract; 2d, Where it is implied from the usage of trade; or 3d, from the manner of dealing between the parties in the particular case; 4th, or where the defendant has acted as a factor: Substantially the same language is used by WILDE, J., in *Jarvis* v. *Rogers*, 15 Mass. 393, and the case in Burrow is there cited. See *Wentworth* v *Day*, 3 Met. 355; *Rushforth* v. *Hadfield*, 7 East, 224.

The answer denies any participation in the trade by Mrs. Wilbur. And it must be found that whatever trade was made, was made by S. M. Field with Mr. Wilbur. This being so, no lien could be created on the premises by Wilbur, because he did not own them and had no interest in them, and this S. M. Field well knew. "A lien is a proprietary interest, a qualified ownership, and in general can only be created by the owner or by some person by him authorized." *Hollingsworth* v. *Dow*, 19 Pick. 228. A contract made with Mr. Wilbur to erect the barn could not give the orators a mechanic's lien even, for the reason that he had no claim or interest there. *Thaxter* v. *William et al.* 14 Pick. 49.

The husband and wife had no power to make a contract as such. Such a contract could only be regarded as the contract of the husband. It is not claimed that the wife made this contract in her individual capacity, but that she and her husband made it together. If this be so, then it follows that she made it independent of her position as trustee, and jointly with her husband, which as to her is as no contract, but is the contract of the husband solely. The authorities cited by the orators' counsel have no relevancy to the case, but refer to rights existing between trustee and *cestui que trust*.

The opinion of the court was delivered by

Ross, J. The only material controverted fact is, whether the orators have established by the requisite measure of proof, that the

barn was built by them at the request of the trustee, Mary E. Wilbur. She denies in her answer making any such request in connection with her husband, or otherwise, and the answer is in this respect responsive to the bill. The only direct witness to such request is the orator, S. M. Field. Where a material fact stated in the bill is denied in the answer, the rule is well settled that something more than the testimony of one witness is required to sustain the bill and entitle the orator to a decree. The orator must overcome the denial in the answer by what is deemed equal to the testimony of two witnesses. *Shattuck* v. *Gay et al.* 45 Vt. 87. This rule does not require that the denial in the answer shall be overcome by the testimony of two living witnesses who were present and cognizant of the fact in controversy. Circumstantial evidence may, if of equal weight and credibility, take the place of the testimony of one or both of such witnesses. The amount of testimony or evidence required to be produced by the orator in such cases, though expressed numerically, is not always the same. If the defendant, by his answer, or otherwise, is shown to · be a very reliable and credible witness, it is manifest that more weighty testimony should be required to overcome the denial in the answer, and to establish the averment in the bill, than there should be if the defendant was shown to be unreliable and entitled to but little credence. So, too, the testimony of witnesses, when to the same facts, is not always doubled by doubling the number. The rule must be construed and applied with good sense and reason, to each case, having reference to other well-established rules and principles in regard to weighing testimony. It requires that the credence and weight to be given to the answer, remembering that the orator has called the defendant into the case as a witness, is to be fairly overcome, and the averment in the bill is to be reasonably established by a preponderance which the law has denominated the testimony of a second witness. We think that the orators have established by this measure of proof, that the defendant, Mary E. Wilbur, did, with her husband, request the orators to build the barn for which recovery is sought in this suit. It is substantially conceded, that the orator, S. M. Field, on the occasion of the request, was in-

formed that the title to the land was held by the defendant Mary E., in trust for her children ; that the said Aaron Wilbur was in poor health, not expected to live long, was about to leave the state for his home in Savannah, Georgia, and that he had no property in this state. Under such facts and circumstances, it can hardly be credited that the orators would have incurred the expense of erecting the barn without the request and acquiescence of the person holding the title, and without relying in some measure on the trust property for their pay. In addition to these facts, the orator S. M. Field directly testifies that Mary E. requested him to erect the barn, and pointed out its location ; and the orator B. B. Field testifies, in substance, that on a subsequent occasion, and after the death of the husband, Mary E. acknowledged her liability and promised to pay for erecting the barn. Mary E. says in her answer, that the orators urged her to pay for building the barn, and she told them she would see about it. The other material facts conceded or established in the case are, that a barn was needed for the use of the trust property ; that Aaron Wilbur's estate is insolvent, and can only be reached, if at all, by going into a foreign jurisdiction, and that the trustee has not any known property from which the orators can be compensated for erecting the barn, except the trust property. Without the employment or request of the trustee, it is well settled that trust property cannot be charged to pay for expenses and improvements which are beneficial to it. Noyes v. Blakeman, 6 N. Y. 569. With such employment or request, although the trustee specially stipulates that he shall not be personally liable, the trust property may be charged with expenses and improvements made by third persons, if such was the understanding between the trustee and the party incurring the expense or making the improvements. Noyes v. Blakeman, supra. This must be taken with the limitation that the improvements are such as, considering the nature of the trust and property, are needful to be made, and as a court of equity will sanction. The trustee will not be allowed to improve the cestuis que trust out of a beneficial enjoyment of the trust property ; neither will third parties be allowed to make such improvements at the request or employment of the trustee, and

charge the same upon the trust property to the detriment of the trust estate. In some cases, where the *cestuis que trust* are of age, the court will compel them to elect, whether to receive the increased rents and profits occasioned by the improvements, by charging the expense of the improvements upon the trust property, or to refuse payment for the improvements, and receive such rents and profits as the property would produce without the improvements. Such questions have most frequently arisen in cases where the trustee had made the improvements. *M. E. Church* v. *Jaques et al.* 1 Johns. Ch. 450 ; *Root* v. *Yeoman et al.* 15 Pick. 488.

The deed creating the trust in Mary E. Wilbur for her children, is silent as to the management of the property. From the age of *cestuis que trust*, it is evident that it was the intention of the donor, Aaron Wilbur, that the property should remain in trust several years. A farm of forty acres ordinarily requires a barn for its proper and economical management. The trustee being left unrestricted by the trust deed in regard to the management of the trust property, has general discretionary powers to manage and superintend the property. In such cases, sums reasonably expended in building farm houses, and in draining, and manuring, and other improvements, will be allowed to a trustee. Hill Trustees, 571. In a settlement with the trustee, the court would not ordinarily withdraw the trust property from her control, until all such expenses were repaid ; and if it did, it would charge the trust property for their payment. 2 Story Eq. ss. 1215, 1239 ; Hill Trustees, 567, 571. We think there is no doubt, on authority and general equity principles, that if Mary E. Wilbur had paid the orators for erecting the barn, in a settlement of her trust account she would be allowed such sum, at least, as the value of the trust property was enhanced thereby, and if the expenditure was made in the exercise of ordinary prudence and in good faith, the sum actually expended by her ; and that she would have the right to charge the same upon the trust property, or to hold the property until she was reimbursed. Usually third persons making such improvements at the request of the trustee, are confined to their personal remedy against the trustee. There are

exceptions to this rule. Where the trustee, as in this case, resides abroad, and has no property which the orators can reach, and where the trust estate has been enhanced in value and made more productive by the labor and expenditure of the orators thereon, made in good faith at the request of the trustee, we think the orators have the right to have their improvement to the property made a charge upon the property and its income. The orators having erected the barn at the request of the trustee, would have the right as against her to recover on *quantum meruit*, but as against the *cestuis que trust* and the property, only such sum as the trust property has been enhanced in value by the erection of the barn, to be paid in such time as the same can be reasonably realized out of the trust property, without any serious detriment to the permanent interests of the *cestuis que trust*.

The decree of the Court of Chancery is reversed, and the cause remanded, with mandate to refer the same to a master to ascertain the sum by which the trust property was increased in value by the erection of the barn ; and, on coming in of the report, to enter a decree for the orators for the payment of that sum and the interest thereon, as a charge upon the trust property, to be paid out of the same, or its rents and profits, at such time or times, and in such manner, as that court shall order, and as soon as may be done without serious detriment to the permanent interest of the *cestuis que trust* therein.