Estate of Henry G. Freeman. Appeal of S. Augusta Freeman, Henry B. Freeman, Isabel F. Frost née Freeman, August F. Richardson née Freeman and Marion F. Wills, née Freeman.

[Marked to be reported.]

*Decedents' estates—Tenants in common—Sale of real estate—Long term lease—Act of April 18, 1853, sec. 2—Constitutional law.*

Section 2 of the Act of April 18, 1853, P. L. 503, known as the Price Act, authorizing the orphans' court to decree a sale where property is held in trust and "one or more persons required to consent. . . . unreasonably withhold consent," is not unconstitutional, as it does not defeat or interfere with the individual rights of property differently and further than any other mode of changing the rights of joint owners to severalty, or regulating the management until that is done.

Testator by his will gave his trustee power to make sale of all or any part of his real estate at its discretion, but directed that no such sale should be made without the consent in writing of the several cestuis que trustent. He also gave the trustee power to make leases from time to time of the real estate, and to collect, demand and receive the rents, income and proceeds thereof. Among the real estate were several lots and buildings thereon, in the business part of a city. The buildings had been formerly residences, and the main value of the property was in the land. The trustee proposed to execute an improvement lease for fifty years which would at once double the net revenue from the property with an increase in the future. The owners of a one sixth interest opposed the lease. In proceedings under the Price Act the orphans' court authorized the trustee to execute the lease. *Held,* (1) that it was not error for the court below to treat the lease as practically amounting to a sale; (2) that the objection by the owners of one sixth interest was unreasonable within the meaning of section 2 of the Act of April 18, 1853, P. L. 503; (3) that the orphan's court had jurisdiction to make the decree authorizing the lease.

Argued Jan. 18, 1897. Appeal, No. 559, Jan. T., 1896, by S. Augusta Freeman et al., from decree of O. C. Phila. Co., Jan. T., 1881, No. 228, directing trustee to execute a lease. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. STERRETT, C. J. and WILLIAMS, J. dissented.

Petition under the Price act to lease real estate.

From the record it appeared that Henry G. Freeman, who

was an attorney at law, left a will by which he devised unto the Girard Life Insurance Annuity & Trust Company of Philadelphia, certain real estate at the southeast corner of Broad and Chestnut streets in the city of Philadelphia, to have and to hold the same upon certain trusts, viz :

In trust to make sales of all or any part of his real estate, at its discretion, for the benefit of his estate, either at public or private sale, etc.    Provided always, nevertheless, That no such sale of any part of his real estate shall be made without the consent in writing of the several cestuis que trustent having any interest therein, and who may at the time being, be of lawful age and accessible.

And further with power to make leases, from time to time, of the real estate, and to collect, demand, and receive the rents, income, and proceeds thereof, etc.

On January 12, 1895, James Black Freeman, one of the parties in interest, presented to the orphans' court his petition praying that the trustee might have leave to advertise for proposals to lease the property at the southeast corner of Broad and Chestnut streets, upon an improvement lease, for a term of years not to exceed fifty years, the proposers to submit plans showing the character of the building proposed to be erected, the amount of rent to be paid and the shortest term for which the proposers would agree to lease the premises.    The proposed lease was objected to by parties representing one sixth interest in the estate.    The court entered a decree authorizing the trustees to execute the lease.

*Error assigned* was in making the decree authorizing the lease.

*Henry B. Freeman* and *I. Newton Brown*, for appellant.—The orphan's court had no jurisdiction to order the lease : Ervine's App., 16 Pa. 256 ; Kneass's App., 31 Pa. 87.

*Geo. Tucker Bispham*, with him *Sharswood Brinton*, for The Girard, etc. Trust Company, Trustee, appellee.—The orphans' court had jurisdiction under the Price Act to order the lease. This act is a remedial statute and it is to be benignly expounded : Gilmore v. Rodgers, 41 Pa. 120.    Alienation for payment of debts does not fall within the act: Spencer v. Jennings,

114 Pa. 618; Van Dusen's Est., 29 W. N. C. 573; Anthracite Savings Bank v. Lees, 176 Pa. 402.

Instances where the jurisdiction of the court under the act has been sustained in this court, where it appeared that the property was unproductive and a charge to the estate, or repairs and improvements were necessary, and a sale therefore decreed are: Moorhead v. Wolff, 123 Pa. 365; Grenawalt's App., 37 Pa. 95; Stevenson's Est., 5 Dist. Rep. 5.

It may be reasonable that the term should extend beyond the period of the life of the trust: Taylor on Landlord & Tenant, sec. 30.

A reasonable time, of course, is to be viewed under all the circumstances of the case, as where a great profit or, conversely, a great loss will result to the estate from making or not making a lease of suitable duration. The trustee must be guided as to the length of the term by a consideration of what is most beneficial to the trust estate: Greason v. Ketteltas, 17 N. Y. 491; Newcomb v. Ketteltas, 19 Barbour, 608; Goehring's App., 81* Pa. 283; Hill on Trustees, 482.

*George P. Rich*, with him *Henry C. Boyer* for Henry G. Freeman et al., appellees, cited Burton's App., 57 Pa. 219; Davis's App., 60 Pa. 118.

*Parker R. Freeman*, for Chapman Freeman, and *J. Edward Carpenter*, for James Black Freeman et al., appellees.

OPINION BY MR. JUSTICE MITCHELL, May 27, 1897 :

The proposed lease is within the words of the testator's grant of power to the trustee to lease the property from time to time at its own discretion, but considering the length of the proposed term in relation to the probabilities of life of the testator's children now living, the trustee and the court below preferred to treat the lease as practically amounting to a sale, and therefore coming within the testator's restriction requiring the consent of all the cestuis que trustent of age and accessible. In so doing the trustee and the court displayed commendable regard for the equitable rights of the heirs, as well as for the security of the title to be passed to the lessee. No reasonable objection can be made to such action.

Treating the lease on the basis of a sale, the testamentary power of the trustee cannot be exercised for want of the unanimous consent of the heirs which the will required as a condition precedent, and resort was therefore had to the orphans' court under the Act of April 18, 1853, P. L. 503. The case falls within the express words of section 2 authorizing the court to decree a sale where property is held in trust and " one or more persons required to consent . . . . unreasonably withhold consent."

The constitutional objections to this statute raised by the appellants are not tenable. As applied to the case, the statute is not the divesting of estates of parties sui juris without their consent, but the regulation of joint rights where the joint owners cannot agree in the control and disposition of the property. It defeats or interferes with the individual rights of property no differently and no further than any other mode of changing their rights to severalty or regulating the management until that is done. The right of a joint owner is to an undivided interest in every portion of the joint property, but this right is accompanied with the ancient incident of partition. Each owner has the right to enlarge his estate to severalty, though in so doing he must reduce its corpus so that the other owners may also have the like privilege. The mode of doing this has always been within legislative control, and this statute does no more. There is no question even of retroactive application of the law, as the act was in force for more than twenty years before the death of the testator, who as an experienced member of the Philadelphia bar must be assumed to have written his will with the knowledge that the powers of leasing and sale which he gave his trustee could be supplemented if occasion arose, by the powers of the orphans' court.

The further argument that the testator only intended short leases, or at most those of ordinary length, would have much force if the trustee were acting on its own discretion under the testamentary authority to lease from time to time, but as already said the trustee and the court have treated the case as practically involving a sale, and if the requisite steps for a valid sale have been taken they must certainly include the lesser act of leasing even for so long a term as fifty years. Such leasing does not contravene any express direction of the testator, but only supplements the authority he gave by a resort to the power

of the court to meet circumstances not anticipated and there-fore not provided for by him.

The only remaining question whether the court was right in deciding that the consent of appellants was unreasonably with-held, cannot be seriously contested. The main value of the property is in the land. The buildings are only a survival of the private residences to which the neighborhood was originally devoted, temporarily adapted for business, but falling far short of the kind of improvement that the present uses of the neigh-borhood demand. The rental of the property in its present con-dition is an inadequate percentage on its assessed value for taxation, and the latter is constantly increasing. It is admitted that the proposed lease will at once double the net revenue from the property, with an increase in the future, in actual amount as well as in indemnity against the increase in taxation; and the property will revert at the end of the term, improved by the erection of a building adapted to its most modern needs, at a cost, entirely defrayed by the lessee, of more than one half the amount of the highest present valuation of the whole property. This plan has the active support of the owners of five sixths of the property, and has been approved by the judgment of the trustee and the court below. The decree is framed with great care to secure every possible interest of the cestuis que trustent, and we are of opinion that it was not only within the jurisdic-tion of the court, but also that the power was properly exercised.

Decree affirmed.

DISSENTING OPINION OF MR. CHIEF JUSTICE STERRETT:

In the absence of any authority in the will itself or in the act of 1853 in connection therewith, the orphans' court had no jurisdiction to make the decree authorizing the trustee to exe-cute a fifty year lease of the premises in question. The juris-diction conferred by the act "to decree the sale, mortgaging, leasing or conveyance upon ground rent" of real estate, is sub-ject to the following express limitations, inter alia, viz: that it "may be done without injury or prejudice to any trust, charity or purpose for which it may be held:" sec. 1, act of 1853. The proviso to the second section declares: "That nothing in this act contained shall be taken to . . . . affect or impair any right or powers otherwise existing in any persons or corporations to

sell, mortgage, lease or let on ground rent any real estate." In this case, the authority given by the will to the trustee to sell in fee simple is coupled with the following positive prohibition, that "no such sale shall be made without the consent in writing of the several cestuis que trusts having an interest therein who may be at the time of lawful age and accessible."

As to the absolute want of authority under the will itself, without compliance with its provisions, there cannot be any question. The cardinal rule of construction which inheres in every grant of power is but a synonym of the rule that a trustee shall do only those acts, in the course of administration, which are essential to effectuate the purpose of his trust. The reason of the rule lies in the presumption of intent derived from the language used. It has accordingly been uniformly held that a trustee of real estate may make repairs, because necessary to prevent decay; but he may not make betterments without general or special authority. Thus in Green v. Winter, 1 John. Ch. 27, where the trustee's power was to sell land for the payment of incumbrances, Chancellor Kent said: "To tolerate such wide deviation from the nature and terms of the trust would be creating a most dangerous precedent. It would be placing trust property in the greatest jeopardy, and perhaps encumber it with burdens too grievous to be borne. I cannot therefore admit of any allowance under this head but such as may justly be considered reasonable reparations or repairs. . . . It is the established doctrine that a trustee can only be allowed for necessary expenditures; and the cestui que trust has always his option to take or refuse the benefits or loss of the unauthorized act of his trustee." In Wykoff v. Wykoff, 3 W. & S. 481, credit for improvement was refused because unnecessary, and because such allowance would afford an opportunity to "improve" the cestui que trust out of his land. Numerous authorities to the same effect might be cited, among which are : Bellinger v. Shafer, 2 Sand. Ch. 293; Dickinson v. Conniff, 65 Ala. 581 ; Cogswell v. Cogswell, 2 Edw. Ch. 231; Field v. Wilbur, 49 Vt. 157; L'Amoureux v. Van Rensselaer, 1 Barb. Ch. 34.

That being the established principle, the question is whether the improvement contemplated here is such as, considering the nature of the trust, the quantity of the estates and the character of the property, are needful to be made, and ought to have

the sanction of a court of equity. Certainly there is nothing
in the nature of the trust itself which would justify it. No one
will pretend that tenants for life, in whom are united the legal
and equitable estate, can compel each other or those in remain-
der to unite in such improvements: Tiedeman on Real Prop.,
secs. 67 and 68. Even a tenant in common in fee cannot com-
pel his fellow to make more than necessary repairs, Kelsey's
Appeal, 113 Pa. 119 ; much less can tenants for life. The mere
separation of legal from equitable life estates can have no effect
in changing the relative rights of those in remainder. The
incidents of these respective estates remain the same. It is
claimed however that because the power to sell, given in this
will, implied a power to mortgage, it also implied a power to
make an improvement lease for fifty years, a term which will  ✓
admittedly extend far beyond the lives of these life tenants, and
probably beyond the lives of a majority of the remaindermen.
But such implications arise only so far as consistent with the
donor's purpose. Thus where an absolute conversion is con-
templated, as is clearly the fact in this case, power both to lease
and mortgage is excluded: Hill on Trustees, 476 ; Evans v.
Jackson, 8 Sim. 217 ; Lewin on Trusts, 425* and 426*, 563, 564.
In any event, it is self-evident that partial execution must be
in substantial harmony with and limited by the testator's pur-
pose. It was an essential part of this purpose that, immediately
on the death of the last cestui que vie, "partition allotment and
division of his entire estate, real and personal," shall be made
as directed by him, and thereupon the duties of the trustee will
necessarily cease. Assume the lease made on the theory of a
partial execution, its tender by the trustee on account would
surely not answer a remainderman's demand for his distributive
share. No rule is better settled than that a donee of the pro-
ceeds of sale may refuse to receive securities and insist upon
cash ; for cash is what the testator gives him and that to which
he is entitled. If he must take the lease he is placed at great
disadvantage in making disposition of his undivided interest.
On the other hand, if the trustee sells subject to a lease which
fixes the rental for a long period of years in advance, primarily
for the benefit of the life tenants, those in remainder lose the
chance of enhancement which is incidental to absolute estates.
Surely the simple scheme adopted by the testator—a trust for

life to one class of beneficiaries, and "partition, allotment and division" to another class—never contemplated any such contingencies.  Such lease is absolutely in excess of the power. When the time should arrive which the testator has fixed for partition and distribution there could be no subject for its support so far as these donees are concerned.  If there be room for doubt as to the correctness of this view, it is removed by the direction which the testator gave in respect of the management of the trust for life.  "To lease from time to time" necessarily means at intervals during the term of the trust and excludes any longer term.  The force of this is sought to be evaded by an implication drawn from the power given the trustee to anticipate, with the unanimous consent of the cestuis que vie, the time of partition and distribution.  But this on analysis will be found rather to add strength to the view here taken.  The purpose of that power was certainly not to change the quantity of the estates originally given.  The destination of the corpus remained the same as before; and there is nothing to justify an inference of any intention to change the time or character of the final distribution as already fixed.  In any event the proceeds of sale must then be ready for distribution.  If there is no change in this respect, the necessary implication is that this power was intended as an alternative provision relating to management pending life tenure.  If leasing the real estate in the manner directed by the will in the first instance should prove unsatisfactory, then with the unanimous consent of the cestuis que vie the trustee might sell by way of anticipation and invest the proceeds until the time already fixed for final distribution. The testator having specified these alternative modes must be presumed to have intended the exclusion of any other.  Iteration shows that he had no other idea of conversion before the termination of the trust than that of sale.  The proposed lease, unlike a mortgage which produces cash, will be in no sense a partial execution of the power given here.  It will not only not make one step towards the purpose of conversion, but will be plainly an actual hindrance.  It is of a nature entirely inconsistent with the testator's scheme of conversion.  It will not produce one dollar of cash answerable to final distribution, but contemplates the continuance of the estate in land long beyond the time fixed by the will.  It will therefore be a palpable breach of trust and subversion of testator's declared purpose.

But, conceding the want of testamentary power, it is insisted that the orphans' court has jurisdiction to grant relief under the act of 1853.  That is not an enlarging but an enabling statute. Its declared purpose was to "unfetter" and make titles freely alienable.  It enables parties who have vested rights to enjoy the benefit of them.  It authorizes what, without restricted powers, the beneficial owners might themselves do.  It makes no attempt to change relative rights of property, but on the contrary it expressly (sec. 2) provides that nothing contained in it shall be taken "to affect or impair any right or powers, otherwise existing," to sell, mortgage or lease.  Disability to discharge liens, bar contingent interests, make complete appointments, probate parol contracts,—these, and the like, parties interested are enabled to remedy—; but search is vain for power to enlarge one vested right at the expense of another: Keller v. Lees, 176 Pa. 402.  Many acts have been passed authorizing sale which have been sustained on the ground of disability of parties interested; but interference with the constitutional right of parties sui juris to exercise the powers incident to ownership has been uniformly condemned: Ervine's Appeal, 16 Pa. 256; Kneass's Appeal, 31 Pa. 87; Palairet's Appeal, 67 Pa. 493.  In the last case, Mr. Justice SHARSWOOD, discussing the legislative power to authorize conversion, said: "But this power to authorize conversion has never been recognized as constitutional by this court except in the case of the property of persons under disabilities, or where there were contingent interests whose owners had not come into existence, and that too, with the consent of those standing in a fiduciary relation of trustee, guardian or committee.  The cases in which such conversion may be authorized seem well enumerated in Mr. Price's valuable Act of April 18, 1853, P. L. 503.  But it has been expressly repudiated and denied in the case of owners sui juris not consenting nor presumed from acquiescence to have consented."  To the same effect is Hegarty's Appeal, 75 Pa. 517.  There are, no doubt, apparent exceptions to the rule; but these on closer view will be found to be in entire harmony with it.

By the terms of the act of 1853 any party who is interested may invoke its aid; and the question now is whether the parties to the present proceeding are in that position.  Certainly the testamentary trustee, as such, is not, for by the express

terms of the will it can only act, if at all, by the consent of its cestui que trustent; and they are under no disability which the act can remedy. It is only where, without the restriction of the trust, the owners could act, that the disability of the trustee may be removed: Burton's Appeal, 57 Pa. 213. If relief be sought by these tenants for life, as implied in the power of sale, the condition precedent of unanimity must also be implied; and such unanimity is wanting. If it be sought by them outside of the will, the answer is that the act does not authorize the court to impose burdens which parties competent to act could not themselves enforce. Suppose these appellees had in fact erected substantial improvements, such as are contemplated here on the property in question, would any one contend for a moment that they could enforce contribution as against the appellants and the remaindermen? Have tenants for life any higher right than tenants in fee in respect of improvements on the common property? Surely not.

But there is the additional consideration that the proposed lease will, as has been shown, be utterly inconsistent with the testator's declared purpose, and is therefore expressly excluded by the terms of the act of 1853, quoted on first page, supra. The "power" to make, and the "right" to demand a sale for the purpose of distribution, etc. cannot be "impaired" by any order of court. The duty to sell is made imperative, and the right to the proceeds is vested in absolute ownership.

The appellees insist that because the appellants "unreasonably withhold" consent to highly beneficial improvements, the court has power to coerce them. If they owe a duty, this must be conceded, but they do not. It has been seen that neither by the terms of the will, nor by any rule of law or equity, is one tenant in common, whether for life or in fee, bound to contribute to the improvements at the mere instance of his fellow. The only security which one tenant has against "improvement out of his title" by another, lies in total prohibition. The question of reason or unreason has no place. Voluntas stat pro ratione. The right of refusal is absolute. The act gives no power to coerce in such cases. There are moreover no parties whose "consent" was "required" by the will to the execution of any lease, and the appellants are not therefore within the terms of the act. The concurrent action of the tenants for

life is in no sense ministerial in character (for the " execution " was the peculiar function of the trustee), but a pure matter of personal judgment beyond the reach of judicial action. The rule of law is well settled that when the consent of a third person is required to the execution of a power, that, like every other condition precedent, must be strictly complied with. So far as the tenants for life were concerned their relation to the sale is a mere right of election pure and simple, whose exercise the court might, as in any other case, compel but not control. The primary intent was that this property should be held during the lives of the children as it stood, and divided immediately on their death ; and change in its form in the meantime is obviously a contingent matter in which each has an individual interest that is as much exempt from divestiture without his consent as any other interest in land. However well satisfied the court may be of the advantageous character of the proposed action to all parties interested, it cannot substitute its own for the testamentary scheme, or " impair rights and powers " which the act of 1853 expressly saves.

In whatever light the proceeding is reviewed, the court was without jurisdiction. The act gives no power to coerce in such case. All the parties for whose immediate benefit these improvements are proposed are tenants in common for life, competent to act for themselves, and have no power to impose any burdens, save those which are incidental to their estate, on unwilling shoulders, even though the result may be admittedly beneficial to all. There are no necessities of justice calling for aid. The parties are now in the enjoyment of every right which the testator intended, and the law can assure them.

I would therefore reverse the decree, dismiss the petition and set aside all proceedings at the cost of the appellees.

WILLIAMS, J., concurring :

I fully concur in the foregoing opinion both as to the character of the trust created by the will, and as to the inapplicability of the statute to the facts of this case.