## Smith's Estate.

*Orphans' court sale—Price Act—Act of April 18, 1853, P. L. 503—Constitutional law—Contingent remainders.*

The legislature has the power to order the sale of a decedent's real estate against the will of parties in interest sui juris, so as to divest contingent remainders and executory devises, and the Act of April 18, 1853, P. L. 503, is therefore constitutional. Grenawalt's Appeal, 37 Pa. 95, and Freeman's Estate, 181 Pa. 405, followed.

The Supreme Court will not reverse an order of the orphans' court directing a sale of real estate under the Price Act where it appears that the property was heavily encumbered, that if rentals should fall off or taxes be increased, the property would be in serious peril, and that the three orphan's court judges who were familiar with the property and who heard the testimony had, after full consideration, determined that it was to the best interests of all parties concerned that the sale should be consummated at the price offered.

Argued Nov. 5, 1903. Appeal, No. 125, Oct. T., 1903, by Anna H. Lyon et al., from decree of O. C. Allegheny County, June T., 1903, No. 413, ordering sale of real estate under the Price Act in estate of Martha McD. Smith. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Petition for sale of real estate under Price Act.

From the record it appeared that the real estate in question was situated at the corner of Sixth street and Liberty avenue in the city of Pittsburg. The petition averred that Henry W. Oliver had offered to purchase the said property for the sum of $1,000,000. The interests of the parties and the circumstances connected with the financial condition of the property are set forth in the opinion of the Supreme Court.

The orphans' court entered the following decree:

And now, to wit: July 25, 1903, upon consideration of the petition, the answers filed, the testimony taken, and after argument of counsel, the court being of the opinion that it is to the best interest and advantage of all the parties interested in the land described that the same should be sold at private sale, that the price offered therefor is a higher and better price than could be obtained at public sale, and that the same may be sold

without injury or prejudice to any trust, charity or purpose for which the same is held, and may be done without the violation of any law which may confer an immunity or exemption from sale or alienation; therefore the Fidelity Title & Trust Company is hereby appointed trustee for all parties interested in said land, for all vested and contingent interests, and for all persons not yet in esse under the will of the decedent.

And it is ordered, adjudged and decreed that the said Fidelity Title & Trust Company, trustee, shall make private sale to Henry W. Oliver, of the land and premises described in the petition, for the price and upon the terms and conditions therein set forth, freed from any contingent remainder or executory devise limited thereon and any entailment thereof; and the said trustee is hereby authorized to execute and deliver a deed to the said purchaser upon his compliance with the terms of sale.

*Error assigned* was the decree of the court.

*W. K. Jennings*, with him *D. C. Jennings*, for appellants.— The court had no power to enter the decree: Ervines's App., 16 Pa. 256; Kneass's App., 31 Pa. 87; Palairet's App., 67 Pa. 479; Hegarty's App., 75 Pa. 503.

*S. W. Cunningham*, with him *Sion B. Smith*, for appellees. The act of 1853 is constitutional: Grenawalt's App., 37 Pa. 95.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904 :

Martha McD. Smith died testate in 1880, leaving to survive her three sons and two daughters. By partition proceedings under her will, her three sons became seized of certain real estate for life with remainder to the children or grandchildren of each, per stirpes, in fee, subject to a life estate given the widow, if any; with a provision that if any son should die leaving no issue, his share should go to his surviving brothers and sisters for life with like remainders. One son died in 1893 without issue, and his share became vested in his two brothers and his two sisters for life, with remainders to their children or grandchildren, per stirpes, in fee. Each brother thereby became en-

titled to the undivided five twelfths, and each sister to the undivided one twelfth, of the property for life. In July, 1903, the two brothers and their children, who were all of age, applied to the orphans' court for an order to sell the real estate at private sale under the act of April 18, 1853, setting forth in the petition sufficient reasons for a private sale and the necessary jurisdictional facts, averring therein that under the will of the testatrix, "contingent remainders and executory devises are limited upon said land, and that it is the intention and purpose to bar and defeat the same and any entailment of said land, and the right of the commonwealth to have inquisition for forfeiture of the same." The two sisters and their children, who were all of age except one, who appeared by guardian, resisted the application on two grounds: (a), that the sale as prayed for would not be to the interests of the parties, and (b), that the court had no jurisdiction to order the sale of the real estate against their will. A decree was made by the court below that the trustee make private sale of the premises for the price and upon the terms set forth in the petition, "freed from any contingent remainder or executory devise limited thereon and entailment thereof." The two sisters, life tenants, have taken this appeal.

The learned counsel for the appellants in their argument have presented for consideration two questions: 1. Does the power exist in the legislature to pass any act authorizing the court to decree a sale of real estate against the objections of some of the living owners who are sui juris? and 2. Would the proposed sale be for the best interests of the parties? In their printed argument the counsel say: "The real question, however, is not whether the decree of the court appealed from could be sustained under the act of 1853, but whether there exists power in the legislature to pass any act authorizing the court to decree a sale against the objections of some of the living owners."

1. This application was made under the Act of April 18, 1853, P. L. 503, commonly known as the Price Act. The constitutionality of this statute is attacked by the appellants and the power of the legislature to enact it is denied. The question, however, has been settled by this court and the reasons assigned in the opinions are amply sufficient to sustain the conclusion.

We need not, therefore, enter into a discussion to sustain the validity of the legislation. The argument of the learned counsel has not convinced us that we should overrule our decisions and sustain their contention. Grenawalt's Appeal, 37 Pa. 95, was an application to the orphans' court under the Price Act for an order to sell the real estate of a testator. The clause of the act authorizing a sale whenever real estate shall be entailed, or contingent remainders or executory devises shall be limited thereon was under consideration. The validity of the act was directly involved and its constitutionality was upheld. THOMPSON, J., delivering the opinion, says : " The objection that all the parties interested immediately or remotely are sui juris, and are not to have their interests divested without their consent, and hinted at in the argument, has also been considered. The act of 1853 is a general law, operating on all cases alike— is intended as a rule of property, and is unlike the case of Ervine's Appeal, 16 Pa. 256, which exposed a legislative attempt to make a rule in a special case after rights had become vested under existing laws. I think it was well decided that such a divestiture of title was not ' by due process of law.' Here, however, the property in question became vested under a rule of law promulgated in the statute, by which it and property similarly situated might be divested and there is nothing, contrary either to natural justice or to constitutional right, to allow the act so to operate, where the fund is substituted for the estate, or so much as may remain after the necessary application to the relief of the estate, or the benefit of those interested in other portions of it. It unfetters the realty from diversity of titles and contingent interests, secures to the purchasers clear titles and to parties interested the value of their interests. This objection is not in the way of the order of sale." Again in the more recent case of Freeman's Estate, 181 Pa. 405, the validity of the act was discussed and sustained. Our Brother MITCHELL, delivering the opinion, says : " The constitutional objections to this statute raised by the appellants are not tenable. As applied to the case, the statute is not the divesting of estates of parties sui juris without their consent, but the regulation of joint rights where the joint owners cannot agree in the control and disposition of the property. It defeats or interferes with the individual rights of property no differently and no further than any

other mode of changing their rights to severalty or regulating the management until that is done. The right of a joint owner is to an undivided interest in every portion of the joint property, but this right is accompanied with the ancient incident of partition. Each owner has the right to enlarge his estate to severalty, though in so doing he must reduce its corpus so that the other owners may also have the like privilege. The mode of doing this has always been within legislative control, and this statute does no more."

In 1896 we held in Keller v. Lees, 176 Pa. 402, that the orphan's court under the Price Act could not decree a sale of the estate of possible after-born children where the remainder has become vested by the birth of children but is liable to open and let in after-born children. The legislature at its next session in the following year, evidently to meet this decision, and to further "unfetter realty from diversity of titles and contingent interests," made provision for such a contingency by the Act of the 14th of June, 1897, P. L. 144, which amended the second section of the act of 1853 so as to authorize the sale of real estate "whenever real estate shall be entailed, or contingent remainders, or executory devises, or vested remainders, which are liable to open and let in after-born children shall be limited thereon."

2. We are satisfied that this sale will be for the best interests of all the parties. The three learned judges of the court below, who are familiar with the property and with values in that locality, and who heard the testimony of the witnesses, have, after full consideration, determined that it is to the best interests of all parties concerned that the sale should be consummated at the price offered. The appellants here are life tenants, and it is conceded by their counsel that the proposed sale will largely increase their revenues for the time being. It is contended, however, that the value of the property will continue to advance, that its revenues will increase, and that when the remaindermen come into possession of it, "they will find an estate greatly enhanced in value ready for them." That may be true, but, at the same time, such a result is merely speculative. On the other hand, the evidence discloses the fact that not only is the present income from the property about $10,000 less than will be realized from the income from the proceeds of

a sale, but that to maintain the present net income received by the life tenants, the whole of the property must be kept rented and the taxes must be levied on the present assessment, which is less than one half of the price the purchaser is to pay for it. Business experience teaches that the continuance of either or both of these conditions is most uncertain. If the property should lack tenants or rents be diminished, and the assessor should comply with his official oath and assess the real estate at the rate which he "shall, after due examination and consideration, believe the same would sell for," the consequences to all the interested parties, in view of the very large mortgage against the property, would be disastrous. One witness who is familiar with present financial conditions in Pittsburg, and whose knowledge of the property and its revenues enable him to speak with accuracy, says: " If this present inflated condition cease and the income stop, that property would be in jeopardy. . . . With a number of the owners, life tenants and remaindermen, who could not protect their interests, it was a very serious question to have an incumbrance of this size against this property if the property fluctuates and the income is affected." These hazardous conditions may prevail at any time and imperil the interests of life tenant and remainderman alike. Under all the circumstances, we are convinced that the best interests of the parties will be served by a sale of the property at the price offered by the purchaser.

The decree is affirmed.