# Bailey, Adm'r, v. Mundin.

*Bill in Equity to settle Administration.*

1. *Administrator; how holds estate after debts are paid.*—After the debts are paid the administrator has charge of the estate for the benefit of the heirs, and a court of probate can not investigate and settle transactions between them which do not strictly pertain to the office of administrator.

2. *Same; what credits entitled to.*—Where the administrator, at the request of the widow and heirs, who were minors over fourteen years of age, consents to perform his office so as to supply the place of a guardian for them, he is entitled to credit for reasonable expenditures for their benefit; and if in so doing he has not left in his hands a residue sufficient to meet the expenses of the administration, the estate of which he was administrator will be subjected to their payment by a court of equity.

APPEAL from Chancery Court of Perry.
Heard before Hon. CHARLES TURNER.

The opinion states the case.

[Bailey, Adm'r, v. Mundin.]

W. L. BRAGG, for appellant.—The bill in this case avers special equities in the administrator of which the probate court could not take cognizance, and they show conclusively that the Chancery Court is the only forum where complete justice can be obtained. The Code expressly makes the estate liable for the costs of administration.—R. C. § 1888, 2060-64. The disbursements of the administrator, in the course of administration, have exceeded his receipts, and he can only obtain relief in chancery.—34 Ala. 565; 16 Ala. 733; 4 Ala. 632; 13 Ala. 91. The heirs are insolvent, unable and unwilling to reimburse the administrator the amounts paid out for them. Their only property consists of their interest in the estate. These expenses were made at their request and upon the faith of their giving him credit for them as administrator. Under the facts in the case, the Chancery Court can and should take direction of the administration of the estate, and sell a sufficiency of the land to pay the fees and charges of administration, and reimburse the administrator for the advances he has made to secure the rights of all.— 17 Ala. 59; 15 Ala. 91; 31 Ala. 207; 51 Ala. 447.

JOHN F. VARY, contra.—The account and settlement can not be removed from the Probate Court into the Chancery Court unless there is some special equity which makes it necessary and requires that such removal should be made.—36 Ala. 109; 33 Ala. 239; 19 Ala. 438; 13 Ala. 269. If the application for the removal is made by the administrator, it can not be allowed, if the equity upon which he seeks the removal arises out of his own carelessness or recklessness, or out of any of his acts wherein he acted with full knowledge of all the facts, as appellant did in this case.—36 Ala. 118, and authorities supra; 18 Ala. 379. The facts of the case bring it fully within this last rule, as there is not an averment of ignorance of any fact connected with the case.

MANNING, J.—Appellant, Bailey, in 1869, became administrator of Needham H. Mundin, and in 1871 had paid all his debts, from the crops and by sale of some perishable chattels. In the latter year, he sold the remaining personal property. Mundin left a widow, Nancy B., and two sons, William P. and Walter C.—the sons being minors—all of whom were defendants in this suit below. By their request and solicitations, and to save the expense of a regular guardianship for the minors, Bailey, being administrator, consented to act the part of guardian also for them, and continued to do so until lately. He provided money for their support and education, and furnished a considerable amount to their

mother, the widow. She received $3,304.31-100; besides which, he spent upon William $2,235.52-100, and on Walter $1,617.17-100. Of the land, 190 acres were assigned in 1871 to Mrs. Mundin for her dower; and the remainder, 490 acres, were leased out by the administrator in 1871, 1872 and 1873; and since the latter year, Wm. P. and Walter have received the benefit thereof to their own use.

The bill sets forth, further, that acting in a spirit of kindness towards the minors, as if they had been his own sons, and having great confidence in them, and in their assurances that he should be held harmless on account of such expenditures, complainant had advanced to them and their mother various sums of money out of his own means; the amount of the debts of intestate which he had paid, and of the sums paid to and for the widow and minors, exceeding (according to the amendment offered to the bill) the whole amount of assets, exclusive of the land that had come to complainant's hands, by $840.05-100, without interest; that there had been, also, a suit brought against him, as administrator, in February, 1875, involving an amount of about $7,000, which was decided in the Spring of 1876, after strenuous litigation, in favor of the intestate; for the defense of which suit, he was obliged to employ counsel, to whom fees were due for their services to the amount of about $1,200; that there were due, besides, as fees, to the late and present judges of the Probate Court of Perry county, which had charge of the administration of the estate, about $140; that there was due to him as commissions for his services as administrator $762.59; and that there was due to him besides, for his superintendence and management of the farming interests, and for attorney's fees, a large amount more; that the only property now remaining of the estate, was the 490 acres of land aforesaid; of which Wm. P. and Walter, the latter still a minor, when the bill was filed, were enjoying the benefit; and their reversion in the dower land; that without this land they are insolvent, and unable to respond for the amount they owe complainant; that he, as administrator, having, in obedience to a citation which they had caused to be issued, filed his account for a final settlement of his administration, in the Probate Court, and having charged therein the moneys he had as aforesaid expended for their benefit, and for the benefit of their mother, and other sums aforesaid, with which the estate is chargeable, the said Nancy, William and Walter have filed objections to said charges, and are endeavoring to have the burden and loss of them, and of the other charges and dues aforesaid, cast upon him, the administrator; that he is advised he can not have these matters properly inves-

tigated and adjusted, and the land sold to pay said charges, otherwise than in a court of equity; wherefore he prays that the said Nancy B., William and Walter be enjoined from coercing a settlement, in the Probate Court; that the administration and settlement thereof, be removed into the court of equity; and that the land be sold to pay the charges aforesaid, or for such relief as he may be entitled to.

A demurrer was filed to the bill by Walter C. Mundin, on his coming of age, in January, 1877, which was sustained, and an amendment afterwards offered was disallowed by the chancellor and the bill dismissed. From those orders, the appeal is taken to this court.

The case made by the bill seems to be one of that not very uncommon kind, in which mutual confidence and regard induce persons who mean to do right, to become imprudently liberal, on one side, in the administration, and on the other in the use of effects belonging to a trust fund; in consequence of which, when the time of settlement arrives, it brings with it disappointment with the smaller amount than was expected, remaining for the discharge of advances or liabilities, or for distribution among the beneficiaries. Hence, there often follow, first, unjust suspicions, and then unjust demands, and vexatious and expensive litigation. This seems to be the situation in which the present parties now stand toward each other. It is probable that a considerable amount of the charges objected to should be allowed, against one or more of the defendants; and it seems, so far as we can judge in the absence of the evidence, not yet taken, that some of the demands made on behalf of the administrator, are out of proportion to the value of the estate, and to the services that were rendered. If the matters in dispute could be adjusted between the parties, (now all of age), the result would be apt to be more satisfactory to them hereafter, than any decision a court may make in the cause.

After the debts of the deceased were paid, the administrator had charge of the estate, for the benefit of defendants only. He stood, as administrator, in the relation of trustee for them, and they as cestuis que trust towards him. In these circumstances, transactions took place between them not strictly pertaining to the office of administrator, merely, and which a court of probate can not investigate and settle.

"If a person," (says Mr. Perry, in his work on Trusts, 2d vol., § 910), "undertakes an office for another, in relation to property, he has a natural right to be reimbursed all the money necessarily expended in the performance of the duty. Thus, a trustee will be reimbursed all his necessary travelling expenses, and all reasonable fees paid for legal advice in the

discharge of his duties, . . . . all costs which he is ordered to pay to strangers, if the litigation was forced upon (him), or was necessary for the protection of the estate." And again: "What the court will allow upon suit, may be done by the trustee without suit. * * * * So, trustees may expend moneys for the support of an infant, if the court shall subsequently approve of the expenditure."—§ 915. And again: "It is a rule that the *cestui que trust* ought to save the trustee harmless, when the trustee has honestly, fairly, and without possibility of gain to himself, paid out money for the benefit of the *cestuis que trust.*"—§ 485. These propositions are sustained by adjudged cases cited by Mr. Perry.

It is common knowledge that since the war, it is very difficult to get fit and responsible persons to act as guardians for minors; and difficult for those willing to act as such to furnish the sureties required by law. Yet it can not be permitted to persons to take to themselves the privileges and compensation of such an office, except in compliance with law. Complainant in this case, did not become legal guardian, and he can not, therefore, be allowed any commissions, or pay for services done in that capacity. We understand from the bill he does not claim any. But if, when there was no legal guardian, he consented, at the solicitation of the minors, then over the age of fourteen years, and of their mother, so to perform his office of administrator as to supply the place, and save them from the expense of a guardian, and he has faithfully, economically, and with a due regard to their condition, and fortune, expended a portion of their means, not exceeding what a regular guardian would be authorized to use for such purposes, in providing for their support and education, respectively, natural justice and equity require that he should have due credit for moneys so expended for their benefit. And if in so doing, he has not left in his own hands a residue sufficient to discharge the costs of the administration, and the expenses of a suit brought against him, as administrator, which it was his duty as such to defend, the estate of which he was administrator, ought to be in some way subjected to the payment of it; whether out of the income only, or out of the corpus of it, will depend upon the facts to be developed.

We think the case made by the bill such as a court of probate was not competent fully to investigate and determine; and that the administration should be removed into a court of equity. The chancellor erred in refusing permission to amend the bill, and in dismissing it, and his decree is therefore reversed.

Let one-half of the costs of the appeal in this court, and

in the court below, be charged against appellant individually, and the other half against appellees.