[Dickinson v. Conniff.]

# Dickinson *v.* Conniff.

*Bill in Equity to enforce Charge upon Trust Estate, under Contract with Trustee.*

1. *Contracts with trustees; when enforced against trust estate.*—The contracts of trustees, though for the benefit of the trust estate, impose upon them a personal liability only, in the absence of statutory provisions to the contrary ; but, when the trustee is also one of the beneficiaries of the trust estate, the person who has rendered services for the estate at his instance, and has obtained a judgment at law against him, with an execution thereon returned unsatisfied, may, by bill in equity, reach and subject his interest in the trust estate.

2. *Trustee's power to erect improvements.*—The principle is well settled, that a trustee may make necessary repairs, and should always be reimbursed for the cost of necessary improvements rendering permanent benefit to the trust estate, unless prohibited, either expressly, or by clear implication, by the terms of the instrument creating the trust ; but, when a testamentary trustee, being the testator's widow, is authorized and directed to keep his estate together in her possession, and to apply the rents and profits to the support of herself and children, until the youngest attains its majority, with power to sell and reinvest in other property, she has no power to erect permanent improvements on a vacant lot, to the extent of four times its value.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 13th May, 1878, by John P. Dickinson, against Mrs. Frances Conniff, the widow of Patrick Conniff, deceased, and her several children ; and sought to subject certain trust property, held by the defendants under the will of said Patrick Conniff, or the rents, income and profits thereof, to the satisfaction of a debt due to the complainant for buildings erected by him, under a contract with Mrs. Conniff, on a vacant city lot in Montgomery belonging to the estate. The will of said Patrick Conniff, which was duly admitted to probate in August, 1870, and a copy of which was made an exhibit to the bill, contained the following provisions : "It is my will that my estate may be kept together, in the possession of my wife, and that the interest, rents and profits, arising out of it, shall be used for the support of my wife and children, and education of my younger children, until my youngest child, then living, shall arrive at the age of twenty-one years, unless my wife shall marry again ; " and in the event of her marriage, she was to have a child's part of the estate. "I further direct that, if my youngest child, then living, arrive at the age of twenty-

[Dickinson v. Conniff.]

one during the life-time and widowhood of my wife, then, and in that event, I will that one half of my estate shall be divided and distributed amongst my children in equal parts; and in case any of my children should die before that time, leaving a child or children surviving, such child or children shall take, on said distribution, what would have been the deceased parent's share; and the remaining half of my estate shall continue in the possession of my wife, the rents and profits to be used for the support of her and such children as remain with her after that time, until her death or marriage;" and on her death or marriage, the residue of the property was to be divided as before. The testator appointed his wife and son-in-law, J. J. Kane, as the executors of his will, and provided that, on the approaching death of either, they should elect a successor, who should have equal power with the original executors; and another clause of the will conferred on the executors "power to sell any part of the property, when in their judgment it would be for the interest of the estate, at public or private sale, and invest the proceeds thereof in other property, or in such manner they may deem most to the interest of the estate."

Neither of the executors ever qualified, nor were any letters of administration granted on the estate; but it was alleged that Mrs. Conniff took possession of the property as trustee, and was in possession when the bill was filed, receiving the rents and profits. It was alleged, also, that the property of the estate was worth about $30,000, consisting of valuable real estate in Wetumpka, a tract of land in Iowa, and two city lots in Montgomery, on one of which the family residence was situated, while the other was vacant; that the complainant made a contract with Mrs. Conniff, during the year 1872, to furnish the materials and erect a dwelling-house and kitchen on the vacant lot, at the price of about $2,200; that he built the house according to the terms of the contract, and received from Mrs. Conniff partial payments about $1,400; that he obtained a judgment against her for the balance, $891, in December, 1877, on which an execution was issued, and returned "No property found"; that the value of the vacant lot was $500, while with the improvements it was worth $2,500, and its annual rental $300. The prayer of the bill was, "that said lot be subjected to the payment of complainant's said judgment, and costs thereon," and for general relief; and by an amended bill it was further prayed, "that said real estate may be taken charge of by this court, and the rents, income and profits thereof, after payment of taxes and city assessments, be applied to the payment of complainant's said debt."

[Dickinson v. Conniff.]

The chancellor sustained a demurrer to the bill, and dismissed it; and his decree is now assigned as error.

R. M. WILLIAMSON, for the appellant.

SAYRE & GRAVES, contra.

SOMERVILLE, J.—The equity of the bill in this case depends, mainly, upon the determination of one question; and that is, whether the improvements made by Mrs. Conniff, as trustee under her husband's will, upon a vacant lot in the city of Montgomery, were of such a character, and made under such circumstances, as to constitute, in *her behalf*, a charge on the trust property so improved, or on its rents and profits. It may be conceded, that if she is entitled to reimbursement, her equity may be subjected to the satisfaction of appellant's judgment, in as much as she has been, as shown by the averments of the bill, pursued to insolvency in a court of law,—the remedy thus afforded being in the nature of an equitable garnishment.

The principle is well settled, both in this State and elsewhere, that the contracts of trustees, executors, administrators and guardians, apart from statutory provisions to the contrary, impose upon them a *personal liability* merely. The creditor, so contracting, must look to them alone for payment; and if the contract is made under the authority of the trust, or in obedience to its duties, they, as trustees, can look to the trust estate for *reimbursement* by the beneficiaries in a court of equity.—*Bailey v. Mundin*, 58 Ala. 104; *Sanford v. Howard*, 29 Ala. 684; *Jones v. Dawson*, 19 Ala. 672; 2 Perry on Trusts, § 485; Law of Trusts, Tiff. & Bull., 583; Code (1876), § 3747.

The will of the testator, in this case, obviously constitutes his wife a trustee, authorizing his estate to be "kept together" in her possession, and the rents and profits to be appropriated for the support of herself and children. Power is also conferred to sell the trust property, and re-invest the proceeds in other property, at discretion. In 1872, she made a contract with Dickinson to construct a dwelling-house, with four rooms, and a kitchen, upon a vacant city lot, a part of the trust property,—he furnishing the lumber and other material. The lot was worth $500, and the cost of the improvements was about $2,200. The value of the lot, as improved, is averred to be $2,500, and its rental value $300. The bill seeks to subject either the property or the rents to an unpaid balance of about $900 on complainant's judgment. We do not think the complainant was authorized, under

these circumstances, by the terms of the trust, to make the improvements in question; and she can not, therefore, claim reimbursement for them. It is said in Perry on Trusts, vol. 2, § 526: " If the trustees have the possession, control and management, they may make *necessary repairs*; but, without some general or special *authority*, they can not enter upon *large improvements.*" The principle is thus stated in Hill on Trustees, * 429: " Trustees, who are invested with general power of management, will be justified in laying out money in the repairs and improvement of the property, such as draining, building farm-houses, &c., manuring, and other similar works. But, without any *general authority*, or a *special power*, they would run the risk of having the payments disallowed, if they ventured to make such an application of trust funds." And again, in Lewin on Trusts and Trustees: " A trustee, clothed with a trust to manage real estates for the benefit of a person absolutely entitled, but incapable from infancy or otherwise to give directions, may make *repairs*. But he must not go beyond *the necessity of the case*, as by ornamental improvements, or the expense will not be allowed."

These general principles are illustrated, in their appropriate application, by the adjudged cases. In *Green v. Winter*, 1 John. Ch. 27 (7 Amer. Dec. 475), a trustee was authorized to sell land, to raise money to pay off the incumbrances, &c. He, in the best faith, cleared land, and constructed houses and mills upon the trust property. For these expenditures he was refused allowance, on the ground that they were not within the purview of the trust. It was said by Chancellor KENT: " To tolerate such wide deviations from the nature and terms of the trust, would be creating a most dangerous precedent. It would be placing trust property in the greatest jeopardy, and, perhaps, incumbering it with burdens too grievous to be borne." He further added, that " it is the established doctrine, that a trustee can only be allowed for necessary expenditures"; citing, in support of the proposition, *Fountain v. Pellet*, 1 Ves. jr. 537.

In *Wykoff v. Wykoff*, 3 Watts & Serg. 481, the court refused to allow a trustee for improvements, on the ground that they " were not such as were necessary to the occupation and profitable enjoyment of the land." It was forcibly suggested, that the operation of such a rule " might be, in effect, to permit the *cestui que trust* to be *improved out of all claim to the land*."

*Bostick v. Blakeny*, 2 Bro. 653, was a case of trust to purchase land; and the land was purchased, and money expended by the trustee in repairs, and also improvements

which were substantial and lasting. The sanction of the chancellor to the investment was refused, on the ground that such a misapplication of the trust funds was unauthorized.

In *Bellinger v. Shafer*, 2 Sand. Ch. Rep. 293, the conveyance of a farm was made in trust for "the support, maintenance and education" of certain children of the grantee. The father of the beneficiaries made improvements on the farm, by the erection of buildings, which was done by the express authority of the trustees. The expenses thus incurred were disallowed, though admitted to be a case of hardship, on the ground that it was unauthorized by the terms of the trust; and, furthermore, on the principle, that one person could not become the creditor of another, without the assent, express or implied, of the latter.

Permanent improvements, were, however, authorized in *Cogswell v. Cogswell*, 2 Edw. Ch. 231, under circumstances somewhat anomalous. Trustees under a will were there empowered to invest trust funds, already on hand, in erecting ware-houses on a vacant parcel of land. The action of the court was justified by the fact that municipal improvements had been made in close proximity to the land since the testator's death, which he could not have anticipated; and it thus became afterwards practicable, by erecting such improvements, to lease the property for a permanent term at a high rent. We can not see that the principle of that case is at all unsound, when guarded by proper precaution.

The case of *Hassard v. Rowe*, 2 Barb. (N. Y.) 22, is a strong authority, however, to the contrary. A bill was there filed by a guardian, to enforce reimbursement out of his ward's real estate, for money advanced for improvements. The property was situated in New York city, and was insured for $3,000. It was destroyed by fire; whereupon, the complainant, in good faith, erected two houses on the lot thus made vacant, in the construction of which he expended about $1,500 of his private funds, in addition to the money collected from the insurance company on the fire policy. The relief sought was denied, with the remark by the court, that, among the numerous authorities cited by counsel, not one had been referred to, in which the rule had been so far extended as to embrace a case like the one then at bar.

A careful investigation of this question leads me to believe, that the cases are rare and exceptional, where courts have authorized large improvements to be made upon trust property, even as a judicious investment of cash funds in the hands of the trustee. But I have found no case in the books, where the trustee has been permitted to borrow money, or contract a large debt on credit, for such a purpose, and

[Adams v. Robinson.]

seek reimbursement out of either the *corpus* or the *rents* of the trust property. I should fear to establish such a precedent, as it might tend to encourage perilous speculations on the part of incautious trustees, and lead to consequences often hazarding the very existence of the principal of the trust fund itself. And it is manifest that the evil would be aggravated, where the authority is first usurped by the trustee, and the sanction of the court is afterwards solicited to give to this act retrospective validity.—*Miller's Estate*, 1 Penn. St. Rep. 326.

We are not to be considered, in these views, as denying the well-established doctrine, that a trustee should always be remunerated for necessary improvements, rendering permanent benefit to the estate of the beneficiary, unless prohibited expressly, or by the clearest implication, by the terms of the trust.—*Myers v. Myers*, 2 McCord's Ch. 214; 16 Amer. Dec. 648.

The demurrer was properly sustained, so far as concerns all of the defendants to the bill, except Mrs. Conniff. We see no reason why the interest personally owned by her in the trust property can not be reached in this suit, and made liable to complainant's claim, unless exempted from legal process, and such exemption is asserted in proper form and time. The chancellor erred in not allowing the bill to be retained for that purpose, and his decree is reversed, and the cause remanded.

STONE, J., not sitting.