COGSWELL AND ANOTHER, executor and executrix, &c. of Cogswell *v.* COGSWELL and others.

By a clause in a will "to permit my said wife to take the interest or dividends on 3000.£. British Government 3. per cent. Stock during her natural life; " *Held*, that she was entitled to the dividends which might be declared or become payable at any time after the testator's death.

By another clause, the executors were to invest in stock a sum of money which would produce an annual income of $1000. And from time to time and as the same should become payable, permit his wife to take such income: *Held*, that the executors, in analogy to paying legacies, might take one year for the investment.

A life estate in a house and lot under mortgage is given by a testator to three persons equally and then to others in fee. *Held*, that the tenants for life must keep down the interest equally out of the rents. That when the life estates fall in, the mortgage remains a charge to be borne by those in fee. The tenants for life are not bound to extinguish it. If the mortgages are called in during the lives of the tenants for life and it should be found expedient to pay the same out of the residuary personalty of the devisees in fee, the latter will stand in the place of the mortgagees so far as to collect the interest payable by the tenants for life. And as in this case the executors had paid off the mortgage, it was also held that the tenants for life must bear the interest which accrued upon it from the testator's death to the time of payment and continue to be chàrged with interest as if the mortgage remained.

Real estate purchased by a testator and devised to tenants for life and to others in fee had not been entirely paid for: *Held* that the executors must pay the balance like any other debt out of the personal estate; that the tenants for life could insist upon it; and that the title would have to be taken to the executors in trust for the purpose of the will.

Life-tenants cannot compel executors, in the absence of any direction by the testator, to use the residuary estate in improvements upon vacant lots. They can make leases for their lives and do any thing to benefit themselves which does not amount to waste or is not prejudicial to the inheritance, without requiring the aid of the court.

Lots with buildings upon them devised to tenants for life and then to others in fee. After the testator's death, ten feet of the fronts taken off to widen the street, which destroyed the buildings. It was considered desirable to erect new ones. The court *directed* the executors to appropriate a sum out of the residuary personal estate to build them, reserving an interest of 6. per cent. upon the actual cost to be paid out of the rents and a reasonable allowance for the depreciation and repair until the life estates should fall.

*January,* 28.
1834.

*Will.*
*Investment.*
*Tenant for life.*
*Mortgage.*
*Purchase.*
*Improvements.*

Nathaniel Cogswell made his will, duly executed, as follows: "First I do give, bequeath and devise, to my dear and beloved Wife Mary, my House Number 26. Varick Street, and the lot of Ground on which the same is erected, with the appurtenances, situate, lying and being in the Fifth Ward of the City of New York, and also the one third of the nett rents,

issues and profits of my other real estate during her natural life, in lieu of and in bar of all claims of dower upon my said estate.   Secondly, I do give, bequeath, devise and dispose of all my estate, real and personal, of whatsoever nature or kind the same may be, and the rents, issues, profits, income and interest thereof unto my brother Jonathan Cogswell of Berlin in the State of Connecticut and Sister Lois Cogswell of the City and State of New York jointly during their lives and to the survivor of them during his or her life and to such person or persons, after the death of the survivor of them, as a court of equitable jurisdiction in the State of New York may appoint, in trust nevertheless for the uses and purposes hereinafter expressed and declared concerning the same, that is to say: Thirdly, to permit my said wife to take the interest or dividends on three thousand pounds sterling British Government three per cent. stock during her natural life.

Fourthly, to invest in stock of the United States or of the State of New York or such other Bank Stock as my said wife shall approve of, a sum of money as shall produce the annual income, dividends or interest of one thousand dollars lawful money of the United States of America; and from time to time as the same shall become payable to permit my said wife to take such interest moneys in the whole amounting to the said annual interest of one thousand dollars as aforesaid.

Fifthly, after deducting therefrom the provision above made for my said wife, to permit my said brother Jonathan to take and enjoy during his natural life the one third of the nett rents, issues and profits of my real estate.

Sixthly, after deducting therefrom the provision made for my said wife, to permit my said sister Lois to take and enjoy, during her natural life, the one third of the nett rents, issues and profits of my real estate.

Seventhly, after the death of my said wife, I do give and devise the House and lot number 26 Varick Street to my Niece Mary Cogswell, the daughter of my said brother Jonathan, and her heirs, so as the same be not subject to the debts, control or management of any husband with whom she may intermarry: but in case my said niece should die without

leaving lawful issue, that the said house and lot shall become a part of the residue of my estate, and become subject to the disposition thereof herein after mentioned.

Eighthly.—After the deaths of my said wife, my said brother Jonathan and sister Lois, and as they shall respectively die, I do give and devise to my niece Louisa Cogswell, the daughter of my said brother Jonathan, and her heirs, so as the same be not subject to the debts or the control and management of any husband with whom she may intermarry, the lots numbers 79 and 80 in Charles street as marked on a certain map of property in the Ninth Ward of the city of New York, heretofore belonging to the Corporation of said city, with all the buildings belonging to me erected theron, that is to say, one-third part thereof upon the death of my wife, one third part thereof upon the death of my brother Jonathan, and one other third part thereof upon the death of my said sister Lois.

Ninthly.—After the death of my said wife, my said brother Jonathan and sister Lois, and as they shall respectively die, I do give and devise to my niece Ann W. Cogswell, the daughter of my brother Jonathan, and her heirs, so as the same be not subject to the debts or the control and management of any husband with whom she may intermarry, the lot number 85 in Charles street, as marked on the said map of property in the said Ninth Ward of the said city heretofore belonging to the Corporation of said city, with all the buildings belonging to me erected thereon, that is to say, one-third part thereof upon the death of my said wife, one-third part thereof upon the death of my brother Jonathan, and one other third part thereof upon the death of my sister Lois.

Tenthly.—I do give, devise, bequeath and dispose all the rest, residue and remainder of my estate, real and personal, that I may be seized or possessed of, to my nieces Mary Cogswell and Elizabeth L. Cogswell, the children of my said brother Jonathan, and their heirs and assigns, so as the same be not subject to the debts or the control and management of any husband with whom either of my said nieces may intermarry.

Eleventhly—In case either of my said four nieces above named shall die without leaving lawful issue, that then and in such

case I do give, bequeath and devise the parts or proportions of my said estate, real and personal, for such niece or nieces, to the children of my brother Jonathan their heirs and assigns, as tenants in common.

Lastly, I do nominate, constitute and appoint my said brother Jonathan Cogswell and my said sister Lois Cogswell, trustees of my said real and personal estate for every purpose both in law and equity, and also the executor and executrix of this my last will and testament; hereby revoking all other and former wills by me heretofore made. In witness, &c."

A codicil, dated the thirteenth day of December one thousand eight hundred and thirty-one, accompanied the will, and was in these words: " I do hereby give and bequeath to my dear and beloved wife Mary and her assigns, the household furniture, kitchen stuff and implements of household in the house No. 26 Varick street, where I now reside; Also the plates, plate, glass and earthenware, beds, bedsteads, bed covering whether of linen, cotton, woollen or silk, bed and window curtains; And also all the wine belonging to me at the time of my death, in the said house or the cellars or vaults thereof. I give and bequeath to my brother Jonathan Cogswell and sister Lois Cogswell and to the survivor of them, and upon the death of such last survivor to such person or persons as a competent equity jurisdiction in the State of New York shall appoint, the sum of ten thousand dollars to be taken out of the residue of my estate, upon trust nevertheless to be invested in stock of the United States or of the state of New York or any other stock of approved stability for the uses of my nieces Louisa Cogswell and Ann W. Cogswell, so as not to be subject to the debts, control or management of any husband with whom they may intermarry, the interest whereof to be paid to them on their separate receipts in equal moieties as the same shall from time to time be received. And in case of the death of either or both of them my said nieces, without leaving lawful issue, that the moiety in case of the death of one of them or the whole in case of the death of both of them, I give and bequeath to the surviving child or children of my said brother Jonathan and their assigns; but in case either of my

said nieces shall die leaving lawful issue, then I do give and bequeath to said issue the moiety which would have belong-ed to the parent so dying. I do give and bequeath unto my brother Wade Cogswell an annuity of one hundred and fifty dollars to be paid to him semi-annually during his life. I give and bequeath unto my said brother Jonathan and sister Lois and to the survivor of them, and upon the death of such last survivor to such person or persons as a court of compe-tent equity jurisdiction in the state of New York shall ap-point, the sum of two thousand dollars, to be taken out of the residue of my estate, upon trust, nevertheless, to be invested in United States Bank stock or any other bank stock of ap-proved stability, for the use of my niece Elizabeth Cogswell, the daughter of my brother Wade Cogswell, the interest of which to be paid to her from time to time as the same be-comes due; but in case of her death leaving lawful issue, I do give and bequeath the principal stock to such issue; but should my said niece die without leaving lawful issue, I do give and bequeath the said principal stock to the children of my brother Jonathan. In witness, &c."

The testator died on the thirteenth day of November one thousand eight hundred and thirty-two; and his will, with the codicil, was duly proved.

He left a large real and personal estate, amounting to more than two hundred thousand dollars. As to the real estate, there was the house and lot known as No. 26 Varick street; five lots and houses in Cedar street, of which one was under mortgage for ten thousand dollars; three lots in Charles street, of which two were vacant and the remaining one was built upon; two lots on Chappel street, one of them had been bought for three thousand eight hundred dollars, and only five hundred dollars had been paid upon it and the balance became due by the contract when the deed should be given, and the other was an old store which required to be pulled down and a new edifice erected; and ten vacant lots on Front street under mortgage for two thousand six hun-dred and ninety dollars. It also appeared that ten feet had been taken by the Corporation from the buildings in Cedar street, and that it would cost thirty thousand dollars to re-build them.

The advice and direction of the court were now asked, upon the following points—

1st. As to the time from which Mrs. Cogswell, the widow, was entitled to dividends on the three thousand pounds sterling and her annuity of one thousand dollars; and also as to the time from which Louisa Cogswell and Ann W. Cogswell were entitled to interest upon ten thousand dollars?

2nd. As to who were to bear the burthen of the two mortgages on the estate and in what proportions; and how and by whom the principal and interest of such mortgages were to be satisfied?

3rd. As to how and by whom the bargain for the purchase of the lot in Chapel street was to be completed; and out of what fund the balance due thereon was to be paid?

4th. Whether an old store-house consumed by fire in Chapel street was to be rebuilt and out of what funds?

5th. Whether the four buildings in Cedar street, about to be demolished by the widening of the street, were to be rebuilt and out of what funds—or what other disposition was to be made touching the said premises?

6th. Whether any and what improvements were to be made on the lots in Front street and Charles street; and if so, out of what funds?

The bill was filed against the widow of the testator and devisees, Mr. Kinney having married one of the latter.

Mr. *G. Griffin*, for the complainants.

Mr. *J. W. Gerard*, for the infant defendants.

Mr. *S. Sherwood*, for the defendants Franklin S. Kinney and wife (late Mary Cogswell.)

*February* 17.

THE VICE-CHANCELLOR:—I. The first question raised by the bill in this cause, upon which the complainants ask the advice and direction of the court is: from what time Mrs. Cogswell, the widow, is entitled to the dividends on the three thousand pounds sterling British government three per cent. stock.

I infer, from the manner in which this is mentioned in the

will, that the testator possessed the particular stock at the time of his death. He does not direct the trustees to make an investment for that purpose, as in other instances where he is desirous of creating an income for annuities; but the bequest is specifically of the interest or dividends upon three thousand pounds sterling British Government three per cent. stock, which the trustees are to permit the widow to take during her natural life. I am of opinion, as the will takes effect from the death of the testator, the widow is, from that time, entitled to the dividends, that is to say, the dividends which may accrue or be declared or become payable at any time after the death of the testator.

II. Next, as to her annuity of one thousand dollars. This is to arise, not from an investment already made, but one to be made in stock of the United States or of this State or of some bank; and as the testator has not appointed the time within which the investment should be made, I think the executors may take one year for the purpose, in analogy to the time allowed by law for paying legacies: 2. R. S. 90. §. 43. The gross sum to be set apart to produce the yearly income of one thousand dollars is considered in the light of a legacy payable by law at the end of a year: 1 Roper on Leg. 588.; and consequently, the widow can only demand the income to accrue from it as commencing at that time, and she will be entitled to receive such interest or income quarterly, half-yearly or annually thereafter as dividends are declared. This, I think, is the plain meaning of the will.

III. The same may be said of the investment of one thousand dollars directed by the codicil to be made in like manner for the use of the two nieces Louisa and Ann W. Cogswell; and the like rule must be adopted with respect to the commencement of the interest payable to them. There is no difference in principle.

IV. Then, as to the two mortgages existing on parts of the real estate. The question is, who are to bear the burthen of them, and in what proportions and how and by whom are the principal and interest of such mortgages to be satisfied?

By the R. S., 1. vol. 749. §. 4., the devisee of real estate, subject to a mortgage executed by the testator, is bound to satisfy and discharge it out of his own property, without re-

1834.

COGSWELL
v.
COGSWELL.

sorting to the executor, unless there be an express direction in the will to the contrary. Here there is no such direction. A life estate in the house and lot in Cedar street (encumbered by a mortgage of ten thousand dollars, being one of the the houses there situated of which the testator died seized) is given, under the trusts of the will, to the widow of the testator and to his brother Jonathan and sister Lois in equal thirds; and by the residuary clause, an estate in fee in remainder in the same property is given to the two nieces Mary and Elizabeth L. Cogswell, subject to the contingency of their dying without issue. The same is the case with respect to the ten vacant lots on Front street, which are under a mortgage of two thousand six hundred and ninety dollars. Now, as between the tenants for life and those entitled in remainder, the former are bound to keep down the interest on the mortgage debts, and they must contribute alike out of their respective shares of the rents and profits during life to pay the interest on those sums. As the life-estates fall in, the principal sums remain a charge upon the inheritance and must be borne by those who succeed to it. The tenants for life are not bound to extinguish the incumbrances. They are only to keep down the annual interest: 4. Kent's Com. (1. Ed.) 72. 73.; and as a consequence of this rule, in case the mortgagees should call in their money or if it should be found expedient to pay them off out of the residuary personal estate belonging to the nieces Mary and Elizabeth, they will be permitted to stand in the place of the mortgagees so far as to collect the interest payable by the tenants for life.

It appears that the executors have already paid off the mortgage of ten thousand dollars. The life-estates must bear the interest which accrued upon it from the death of the testator to the time of such payment; and they must continue to be charged with the interest on the principal sum in the same manner as if the mortgage remained. And the same rule must be observed with respect to the two thousand six hundred and ninety dollars whenever that mortgage shall be paid.

V. As regards the contract for the purchase of the lot in Chapel street: by whom is it to be completed and out of

what fund is the balance of the purchase money to be paid?

Upon the principle that equity considers that as done which is agreed to be done and that from the time of entering into an effectual contract for the sale of lands the purchaser is looked upon as the owner, so that in the event of his death the land descends to his heir or may be devised in his will: the change being as complete under a contract in the view of a court of equity as though the legal title had been conveyed: Jeremy's Eq. Jur. 446, there can be no doubt but this lot is included in the devise of the life-estates before mentioned and of the remainder to the same two nieces. The balance of the purchase money unpaid stands as a debt against the testator which the executors must pay out of the personal assets like any other debt, unless it shall be found most advantageous to those interested in this part of the estate to rescind the contract with the vendor if he will consent. But I see nothing to prevent the tenants for life from insisting that the purchase shall be completed for their benefit. The title will, of course, be taken to the executors in trust for the purposes of the will. The circumstance that the old store house which stood upon this lot has been destroyed by fire since the death of the testator, does not give the tenants for life a right to have it rebuilt at the expense of other parts of the estate: because the lot as vacant is proved to be as valuable as it was with that building standing upon it.

VI. Another question is: whether any and what improvements are to be made upon the Chapel Street lots, the lots in Front Street and those in Charles Street; and if so, out of what funds? Most of these are vacant lots. Such buildings as are standing upon any of them are of little value, and the property, in its present condition, is bringing very little income. Still, this affords no sufficient reason for applying the residuary personal estate to the erection of new buildings or the making of improvements on the lots for the benefit of the life-tenants. The testator has given no directions to this effect; and the parties must be content to take the property in the condition in which it happens to be at the death of the testator. They are at liberty to make leases for their lives, and to do any thing they please with the property for their own benefit not amounting to waste or inju-

ry to the inheritance—and this too without requiring any direction or authority from the court for the purpose. If the interest of the money for which the lots would sell should be deemed better than any rents which can be obtained for the lots, a sale, perhaps, under the law of partition, may be effected; and in that event the proceeds can be invested upon security at interest during the continuance of the life estates for their benefit—but, at present, the court has nothing to do with that matter.

VII. The remaining question to be considered is: whether the four buildings on Cedar Street, about to be demolished by the widening of that street, are to be rebuilt; and if so, out of what funds—or what other disposition are the trustees to make of this portion of the property?

The Corporation of New York take off ten feet from the front of the lots to widen the street. This proceeding is subsequent to the death of the testator and it has produced an alteration in the condition of the property not foreseen or provided for in the will. Whatever advantage results from an increase in the annual value of the property in consequence of the lots becoming more valuable as scites for ware-houses, and which is abundantly proved, the tenants for life are entitled to. On this point there is no dispute. But how are they to avail themselves of it? Warehouses are the proper buildings to be erected on the lots, in order to bring the best income. This is likewise proved. The persons having the life-estates cannot be required to erect buildings at their own expense; nor, under leases of so uncertain a tenure, as for lives only, can lessees be found who will pay a reasonable ground rent and at the same time, put up buildings of the proper description, and be obliged to remove or leave them at the expiration of the leases, without being compensated for their cost or value.

It is said, however, that, upon leases for a term certain, not less than twenty-one years, requiring the lessees to construct such buildings as they may think property, with the privilege of removing them at the end of the term, a ground rent of one thousand dollars per annum for each lot may be obtained; and testimony to this effect is produced. But the difficulty in this case is, that the life-estates may cease before the ex-

1834.

CCGSWELL

v.

COGSWELL.

piration of leases, granted for a term certain, as for twenty one years, and in that event it may be injurious to those in remainder when they come into possession to find the inheritance incumbered by an outstanding term; and so, on the other hand, the life estates may possibly continue beyond the expiration of such leases—in which case, the lots may be left vacant upon their hands and unproductive for the residue of their lives. It is true, this last difficulty may be obviated by granting leases in the first instance for the term of twenty-one years at all events, and for as much longer as the life estates or any of them shall continue.

Yet, this term of twenty-one years certain cannot be granted safely, because those entitled upon the dropping of the life estates are now infants and will not be bound by any assent of their guardian *ad litem;* nor is there evidence before me to show that their interest requires the court should undertake to bind them by its decree to the observance of such contracts. The only other method proposed, and it appears to me to be the one liable to the least objection, is that the trustees should be allowed to appropriate about thirty thousand dollars of the residuary personal estate to the erection of new substantial ware-houses upon the four lots, each building to cost (according to the testimony of what will be suitable and proper in this respect) about seven thousand five hundred dollars, reserving an interest of six per cent. upon the actual cost to be paid out of the rents. and in addition thereto a reasonable allowance for the natural depreciation and wear and tear of the buildings until the life estates shall fall. In this way, the tenants for life will receive the "nett rents and profits" of this portion of the estate and, in the meantime, the money expended in buildings will be a safe investment and drawing interest (the tenants for life keeping the buildings insured and paying the taxes) and upon the determination of the life estates, those to whom the money invested will belong, come into the possession of the same in the permanent improvements upon the lots—somewhat lessened in value, it is true, but the depreciation compensated for in the allowance made for the purpose. This appears to be just and equitable on both sides. I shall, therefore, adopt it.

There must be a reference to ascertain the proper allowance to be made by the tenants for life on account of the depreciation in the buildings. For this purpose, the master must ascertain the probable duration of the lives, taking an average of the three, and how much less the buildings will be worth at that time from natural causes and ordinary use than when new and this amount he must apportion to be paid out of the rents in such manner as may be just.

The question of costs and further directions are reserved. Order accordingly.