NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
December, 1880.

CRAGG v. RIGGS.

*In the matter of the accounting of* GEORGE W. RIGGS
*and* JOSEPH K. RIGGS, *executors of, and trustees
under, the will of* ELISHA RIGGS, *deceased.*

When a corporate dividend reaches the hands of a trustee holding stock,
the determination of the rights of the respective beneficiaries rests with
him, unaffected by any action of the corporation in declaring the divi-
dend, and the rights of the beneficiaries then attach.

The rational and equitable rule by which to determine the relative rights of
the life tenant and remainder-man, in respect to stock dividends in cor-
porations, in whose stock the fund is invested, is to inquire how much
of the stock dividend was capital, or made to represent an increase in
the value of the property, and how much came from income or earn-
ings, and also how much of the stock dividend was made up of accu-
mulations before, and how much from earnings after the investment.

The testator, by his will, gave his residuary estate to his five sons and one.
daughter, in equal shares; the daughter's share, however, being vested
in his executors, in trust, to invest the same, and pay to her, during
her life, "the net interest, dividends, or other periodical income
thereof," the principal, upon her death without issue, going to her sur-
viving brothers. The daughter having died without issue, the execu-
tors, at the instance of her administrator, filed their accounts, wherein
they credited certain stock dividends made by various railroad corpora-
tions, whose stock they held, to capital account, whereby these accrued
solely to the benefit of the remainder-men. *Held,* that, there being no
suggestion that the stock dividends represented anything but income or
profits of the corporations, the accounts must be corrected by crediting
the dividends to income account, and discharging them from the cap-
ital account, and the proper proportion be paid to the administrator
of the tenant for life.

The authorities, with reference to the relative rights of life tenant and re-
mainder-man in such a case, collated and discussed.

THIS was a motion to confirm the report of a referee,
to whom, upon objections being filed to the accounts of
George W. Riggs and Joseph K. Riggs, executors of

and trustees under the will of decedent, they were referred, to examine ; opposed by them and also by Samuel W. Cragg, administrator of the estate of Mary A. Cragg, formerly Mary A. Riggs, decedent's deceased daughter.

The decedent, by his will, after making certain specific bequests, gave the rest, residue and remainder of his estate to his five sons and daughter, "and such other child or children, if any, as may be hereafter born to me, and to their respective heirs, executors, administrators and assigns, in equal portions, or share and share alike, except the share or portion of my said daughter Mary Alice Riggs, which I dispose of for her sole and separate use and benefit, whether married or unmarried, as follows : that is to say, I hereby give, devise and bequeath the same to my executors hereinafter named, in trust, for her separate use and benefit during her natural life, to invest and improve the same at their best discretion, and to pay to her, from and after her arrival at the age of twenty-one years, or marriage with the consent of her mother, if living, whichever event may first happen, into her own hands, whether married or unmarried, and upon her own separate receipt, to be given from time to time, and not by way of anticipation, under her own hand, which alone shall be a competent discharge therefor, the *net interest, dividends or other periodical income thereof*, and at her decease, I hereby give, devise and bequeath the capital of her said share or portion to her issue, or other descendants, in equal portions, or share and share alike."

If his said daughter should not marry, or marry, and have no issue that should survive her, then upon her de-

cease, her share or portion in the residuary estate was devised and bequeathed. to her surviving brothers, and their issue, etc.

Decedent died August 3, 1853, leaving him surviving the said. six children, two of whom were the accounting executors and trustees, and two of whom, viz.: William H., and the daughter Mary A., were then minors.

Mary A. married Samuel W. Cragg, afterwards the administrator of her estate, and died intestate March 9, 1870, leaving no children.

The executors, on the petition of her administrator, filed one account, as such, from August 3, 1853, to May, 1871 ; and, as testamentary trustees, they filed two accounts, one from August 3, 1853, to June 29, 1860, when said Mary A. became twenty-one years of age, and another for the period between June 29, 1860, and March 9, 1870, the date of her decease. As the share or portion of Mary A. in the residuary estate, given at her death, under the then existing circumstances, to her surviving brothers, did not include the " net interest, dividends, or other periodical income thereof," the questions that arose herein were whether certain items in the accounts were, as between said life tenant and the remainder-men, to be treated as income or principal. The facts were not disputed, but numerous exceptions were filed to the referee's rulings, by the executors and trustees, and also by the contesting administrator. Among these, the first exception by the executors was to the allowance of the contestant's objections to certain items, amounting to $16,446.34, and relating to stock dividends by various railroad corporations in which they held stock ; which were by them credited to capital account, and which the

referee held should have been credited to income account, and its proper proportion paid to the life tenant, Mary Alice Riggs, or her administrator ; it being understood that said dividends represented the income or profits of said corporations.   The portion of the opinion delivered upon this exception is here given.

Austin G. Fox *and* Waldo Hutchins, *for the executors and trustees.*

Wm. M. Prichard *and* Algernon S. Sullivan, *for contestant,*

The Surrogate.—It is apparent that the decedent intended " the net interest, dividends, or other periodical income " of one-sixth of his residuary estate, for the support of his said daughter, the other children receiving their shares absolutely, the capital of said one-sixth being disposed of after her decease.  *Perry on Trusts*, § 545 (2 ed.), states the issue raised by this exception, substantially as follows : that the early English rule, that all stock dividends, so called, together with extra cash dividends or bonuses, belong to the remainder-man, has been so changed that dividends in money, which come from the earnings of capital invested, belong to the tenant for life ; but that the question arises, where a corporation has capitalized a part of its earnings by using them to enlarge its property or to improve its value, and the corporation votes to issue and apportion among their stockholders new certificates of stock, which, in whole or in part, represent the amount of earnings capitalized, and on this latter state of facts, the issue is whether such stock dividends belong to the life tenant or remainder-man.   And Mr. Perry, in a note at page 78 of vol. 1, says that, from the character of the de-

cisions in the various States, and from the great number of States in which no decision has yet been had, it may be considered an open question, at least in a great majority of the States.

In Hooper *v.* Rossiter (1 *McClel.*, 536), cited by Perry, it was held that wherever the addition was made clearly and distinctly, as dividend only, the tenant for life was to have it; but when not given as a dividend, it was considered an accretion of capital, without regard to the expression of the testator, dividends, dividends and profits, dividends, interest and profits, or interest, dividends, profits and proceeds.

In *Re* Barton's Trust (*L. R. 5 Eq. Cas.*, 238), it was held that where shares were settled upon trust, to pay A., for life, " the interest, dividends, share of profits, or annual proceeds," and where, during A.'s life-time, an addition of three new, fully paid-up shares to those already held in trust for her (A.) was made, pursuant to a resolution of the company to apply a portion of " the net earnings during the half year " to necessary works, a dividend being declared out of the remaining portion of the earnings, these new shares, representing the money so applied, were capital, and not income, as between the life tenant and remainder-man. The vice-chancellor held that the company was not bound to divide the profits, and that it was competent for them to set apart, for contingencies, so much as they thought fit, and that the dividend, to which the tenant for life was entitled, was the dividend which the company chose to declare, and, when they elected to carry a part of the earnings to capital account and turned it into capital, they had the authority to do it, and the tenant for life could not complain. He based

the decision upon Paris v. Paris (10 *Ves.*, 188), where Lord Eldon said, that the bank had the power to give the bonus to the tenant for life or not.

In Minot v. Paine (99 *Mass.*, 101), the same doctrine was laid down. See, also, Balch v. Hallett (10 *Gray*, 403). These cases substantially hold that when the apportionment of shares, or stock dividend, creates new capital, thereby enlarging and increasing the value of the property, whether it comes from earnings or other sources, it belongs to the remainder-man, while dividends, paid in cash or otherwise, not in addition to, or diminution of the capital, go to the tenant for life.

In Daland v. Williams (101 *Mass.*, 571), it was held that though the dividend was declared in stock or cash at the option of the stockholder, yet, if he, being a trustee, elected to take the stock, and it was for the interest of the estate that he should, and all the parties so agreed, it belonged to the remainder-man.

In contravention of this doctrine of the English and Massachusetts authorities, it is claimed that nothing but profits can be divided, and that all dividends declared, whether in stock or cash, being the produce, proceeds or result of the property, belong to the tenant for life.

In Earp's Appeal (28 *Penn.*, 368), it was held that all accumulations in stock, after the death of a testator, were a part of the income, and as such belonged to the tenant for life, and that no act of the corporation could give them to the remainder-man ; that the value of the stock, held by the testator at his death, was the capital of the trust, and all income of such capital, whether in the form of other certificates or not, must be regarded as income.

In Wiltbank's Appeal (64 *Penn.*, 256), a corporation

increased its shares, giving the right to subscribe therefor to the old shareholders at par. A trustee took the shares to which the estate was entitled, paid for them with his own money, and sold them for an advance which he carried to the credit of the capital. It was held that such advance was a premium upon the stock and a product of it, and belonged to the tenant for life.

In Leland *v.* Hayden (102 *Mass.*, 550), a stock dividend was made, which was bought in by the corporation with its earnings, which dividend did not represent an increase of the capital, and the court decreed it to be income and to belong to the life tenant.

In Van Doren *v.* Olden (19 *N. J. Eq.*, 176), the chancellor sent the case to a master to inquire and report how much of the stock dividend was capital, and how much income ; and also how much of the stock dividend was made up of accumulations before the investment of the trust fund in the stock of the corporation, and how much of it came from the earnings after the investment.

Upon this conflict of authority, and the contrariety of reasons given by the respective courts for the conclusions reached, it becomes necessary to consider the views of our own courts upon the subject, and to deduce from all some rational and definite principle upon which this vexed question may be determined, consistently with the rights of life tenants, and of remainder-men. It is the occasion of surprise that so little has been said by our courts upon the subject.

In Clarkson *v.* Clarkson (18 *Barb.*, 646), the testator gave the residuum of his estate to his five children, three-fifths to his sons absolutely, and two-fifths to his two daughters, in trust, to pay "the interest, dividends,

and proceeds" to said daughters for life, with remainder over. The trustees invested $12,600 in the capital stock of the Utica & Schenectady Railroad Company, in one hundred shares, and afterwards invested $6,000, in sixty shares, in the stock of the Mohawk Valley Railroad Company. The first-named company paid an annual dividend of ten per cent. upon the par value of the stock, which was paid to the trustees, and afterwards it paid an extra dividend of sixty per cent. on the capital stock at par, amounting to $6,000, after which a consolidation of said companies with others took place under an act of the legislature, whereby the New York Central Railroad Company was formed, and the trustees became entitled to, and received, an equal number of shares to those held in the two companies, being two hundred and twenty shares of $100 each, and also bonds or certificates of the new road for the sum of $55 on each of the two hundred and twenty shares held in the former companies, amounting to $12,100. The new company's stock was worth $115 per share, and the bonds ninety per cent.

It was held, that it was the intention of the testator that all the gains, profits, income and proceeds of the two shares of his estate should go to his daughters, as tenants for life, and that the sixty per cent. stock dividend belonged to them, and the trustees were directed to deliver the same or its substitute, and all income, dividend, or increase received thereon, or pay the value thereof; that with respect to the bonds or certificates of the new road the case was different; that these, not being paid to the trustees, either as interest, dividends or proceeds, but as the difference between the value of the stock of the old and new corporations, were to be re-

garded as capital, as though no consolidation transfer had taken place, except that the bonds received for the sixty shares would follow their principal, and go to the *cestui que trust;* that, upon the coming in of the report of a referee, to ascertain the value of the remaining one hundred and sixty shares, should the value of such stock and bonds and certificates be equal to the capital invested, or if deficient, upon the tenants for life making up such deficiency, a decree might be entered, directing the trustees to deliver over to them the sixty shares of stock dividend, together with the bonds, certificates, and all dividends thereon, received by the trustees.

The facts of this case sharply present the question under discussion; but it is a singular fact that the learned judge who delivered the opinion confined his discussion to the question, whether the life tenant was entitled to extraordinary cash dividends, which the later authorities in England award to the life tenant. There seems to be no discussion or review of the numerous conflicting authorities, as to who is entitled to stock dividends. But, at page 657, the learned judge says: "the stock payment of sixty per cent., made upon this investment, was properly dividends, extraordinary in amounts, not in manner of payment, that being a matter of policy in the company. 'Dividends,' as used in the will, is unqualified; it includes all distributions to corporators, of the profits of the corporation, large or small, made at long or short intervals, and without any regard to the manner or place of their declaration, or mode of payment;" and he adds that the terms of the will clearly showed that the testator intended that all the gains, profits, income and proceeds of the two shares of his

estate,° of whatsoever kind, name, or nature, should go to his daughters as tenants for life, and that intention should not be defeated. The authority of this decision cannot be denied, though, in the conclusion reached, the court principally considered a question not involved.

In *Re* Woodruff's Estate (1 *Tucker*, 58), the same question was so decided, upon the authority of Clarkson *v.* Clarkson, above cited.

It appears, therefore, by the authorities in New York and New Jersey, that the real inquiry is, how much of the stock dividend was capital, or made to represent an increase in the value of the property, and how much came from income or earnings, and also, how much of the stock dividend was made up of accumulations before, and how much from earnings after, the investment. And this, it seems to me, is the rational and equitable rule, by which to determine the question as to the relative rights of the life tenant and remainderman.

This rule does not invade the prerogative of the corporation, to withhold the declaration of a dividend, as shall seem to them best; free from any interference on the part of the stockholders, except by the exercise of their influence to procure the *declaration* of a dividend. At the same time, it denies the right of the corporation to discriminate against the life tenant, in favor of the remainder-man, by changing the name or form of dividend, when made out of income, proceeds or profits of its business.

From the best consideration I have been able to give this question, I am of the opinion that when a dividend

reaches the hands of a trustee, the determination of the rights of the respective beneficiaries rests with him, unaffected by any action of the corporation in declaring the dividend, and that the rights of such beneficiaries then attach; that the trustee, in the adjustment of those rights, should look to the real question, whether the dividends represent income or profits, or capital, without regard to the form of the dividend, or the name by which it is declared. Otherwise the *ipse dixit* of the corporation would be substituted for the judgment of a court, which alone has competent jurisdiction.

This rule seems to me to obviate what seems an absurdity in the Pennsylvania decisions,—that the life tenant is entitled to any increase of the value of stock which may have resulted from other causes than the use of the income or profits, and which would seem to imply a liability on the part of the life tenant to keep the value of the capital good, though diminished by other causes than the distribution of it, as a stock dividend. And it avoids, it seems to me, an equally absurd view, taken by the Massachusetts authorities, especially in Minot *v.* Paine, above cited, that cash dividends, however large, must be regarded as income, and stock dividends, however made, as capital; for that rule would enable the corporation to absorb the entire income, not in necessary repairs and improvements, and enlargement of the facilities of business, but by increasing its stock and dividing such profits, under that name, by which a life tenant would be turned over to the income or profits of the income or profits, instead of the real income and profits themselves,—which may be reasonably assumed to have been the intent of the testa-

tor—or, worse still, entirely deprived of income by the continual capitalization of the income. For if such capitalization continue until the dissolution of the cor· poration, the remainder-man, upon that theory, would receive the entire income and capital, by the assumption of judicial functions by the corporation.

As there is no suggestion in this case that the stock dividends, referred to in the exception under consideration, represented anything but income or profits, the conclusion reached by the referee, that they should be credited to the income, should be sustained, and the exception overruled.

But it is my duty to say, that if there were anything in this case to warrant the conclusion that any of the dividends so declared, whether in cash or stock, included income earned before the death of the testator, and before the rights of the life-tenant attached, I should deem it my duty to send the matter to a referee, to take an account in respect thereto.

Ordered accordingly.