Ruger, Ch. J.
The matter here in controversy arises between the representatives of the life estate and certain remaindermen, with reference to the proper distribution between them of an increase in the amount of the trust fund, discoverable upon a sale of the securities in which it was invested, after the life estate terminated.
The fund was created in the year 1828, under the will of Peter P. Goelet devising to his executors, as trustees, the sum of $50,000, to invest “in funded stock of the United States, or of the State of New York, or in good bonds and mortgages on real estate,” with directions to pay “ the annual interest, income and dividends thereof ” to his daughter Jean B. Goelet during her life, and upon her death, leaving no issue, to divide the “ principal or capital sum aforesaid ” “ among my other children in equal proportions.” A codicil to said will, made in the same year, increased the said'fund by an additional sum of $20,000, which, upon the death of said Jean B. Goelet without issue, was also directed to be paid to her surviving brothers and sisters or to their respective representatives.
During the existence of this trust, which extended for fifty-four years, to the death of Jean B. Goelet in 1882, the annual interest collectable upon the sum invested was duly paid her by its trustees. It does not appear affirmatively in the case in what securities the capital sum was originally invested, or when any investment or conversion of them occurred; but the evidence shows that, in 1880, it was represented in unequal proportions by United States bonds, bonds of the cities of New York and Brooklyn, bonds and mortgages on real estate, and the sum of $3,424.95 in cash. The cash seems to have been the result of an increase in the value of some securities exchanged or converted by the trustee prior to 1880. In April, 1880, an order was made by the Supreme Court in a proceeding instituted by Robert Goelet and Ogden Goelet who, with" Elbridge T. Gerry, had succeeded to the said trusteeship under the will of Peter Goelet, who died in 1879, to ascertain the amount of .said fund, the securities in which it was invested and to obtain their discharge from the duties and obligations *181 of said trusteeship upon their delivery of said trust funds to their associate, Mr. Gerry. Jean B. Goelet and Mr. Gerry were both parties to this proceeding, and acquiesced in the order of the court appointing Mr. Gerry sole trustee and defining the securities and capital of the trust fund as it then existed.
It may fairly be assumed from the evidence that this fund has always been kept invested in securities upon which there was a fixed rate of interest, payable annually, determinable by the provisions of the security, and that it has never been possible for the trustee to receive or secure therefrom any extra dividends or any greater annual income than that producible by fixed rates of interest. A sale of these securities by the trustee, after the death of the life tenant, resulted in a surplus of nearly $23,000 over the amount of the original investment, and this sum is claimed respectively by the representatives of the life tenant and by the remaindermen.
The primary rule for the determination of questions arising upon the construction of wills is the ascertainment of the intent of the testator from a consideration of its provisions. In ' the case in hand, the will provides specifically for the interese which the legatee for life was to take in the fund, and it is limited to the “ annual interest, income and dividends thereof all beyond this must, from necessity, have been intended to go to the remaindermen, for there are no other persons who could lawfully take it.
This case is not analogous to, and presents none of the questions or embarrassments attending, the division of gain or profits arising upon investments in trade or the stock of corporate business enterprises, and which are usually represented by dividends, either regular or extra, payable in cash, stock or scrip, or remaining undivided in the hands of the corporation. The authorities in such cases are very numerous, and show that it is often a matter of great difficulty to distinguish with precision between those gains constituting an accretion to the fund, and those which legitimately may be termed the earnings of the investment, properly distributable by way of dividends to the stockholders of the corporation.
*182 In this case, however, the investment is directed to be made in securities bearing a fixed rate of interest, which can neither be increased by the prosperity or diminished by the misfortunes of the debtors, and are eventually to be satisfied by the repayment of the principal sum of the obligation.
At the time of the conversion of this fund by the trustee, lie held in his hands obligations which upon their face called for the repayment to him of the sum of $10,000 only, and the purchasers from him received obligations which at maturity were redeemable by the obligors at that sum.
The cause occasioning the increase in question seems to have been a depreciation in the rate of interest effected by natural causes, and which gave an increased value to securities bearing the higher rates of former times.
This constituted in no sense a profit upon the investment, but was an accretion to the fund itself arising from natural causes, and was liable to he altogether lost by the approximation of the securities to the period of their maturity. The benefits derivable from this condition were enjoyed annually by the beneficiaries of the fund in the increased value of the .income derivable therefrom. Had the life tenant lived to the ' maturity of the bonds, she would have received in annual interest the entire difference, if any, existing at any time prior thereto, between the face and market value of these securit
The theory of the will did not contemplate any traffic ui securities by the trustee, but a permanent investment in interest-bearing obligations subject to be sold or exchanged only when the exigencies of the trust required it to be done.
It is quite clear that the life tenant could not have compelled the trustee to sell or convert securities, lawfully purchased and held by him, upon the ground that their market value had appreciated in his ■ hands, any more than he could have compelled her to make good any depreciation in the value of such securities. The acquisition and retention of such securities was one of the objects contemplated by the will of the testator, and was essential to execute his design, and a proceeding to compel a sale of the securities would plainly *183 have been contrary to his intent in creating the trust. If the will liad required the trustees to invest in real estate, the rents, income and profits of which were made payable to the life tenant, with remainder over, it cannot be questioned' but that any increase of the value of the land from natural causes would have been an accretion to the capital, and inured to the benefit of the remaindermen. Perry on Trusts, § 545, p. 486; Cogswell v. Cogswell, 2 Edw., 231, 240, And we can see no difference in principle between this case and the one supposed.
The questión here presented was up in the cases of Townsend v. U. S. Trust Co., 3 Redf., 220, 222, and Whitney v. Phoenix, 4 Id. 180, before the Surrogate of Hew York, and it was there held that an enhancement of the value of XL S. bonds held in trust went to the remaindermen, and not to the legatee for life. These decisions accord with our views.
The cases cited by the learned counsel for the appellant may all be classified as cases where the terms of the trust authorized investments in the stock of private corporations or trading enterprises, whose profits are largely affected by the vicissitudes of business and trade, and the disposition of whose gains and profits is largely, if not wholly, left to the discretion of the managers of the enterprise. In such cases it was plainly the intention of the settlor of the trust that the life tenant should have the advantage of any extraordinary profits realized from the investments.
As we before said, these cases are not analogous. The circumstance that the trustee in this case at some time invested a portion of the funds in unauthorized securities would not seem to have effected any change in the respective rights of the life tenant and remaindermen in the corpus of the trust. When the fact came to tlieiv knowledge, in 1880, they each and all seemed to have acquiesced in and approved the action of the trustee in making the investment, and it cannot now be objected on the part of either of them that any interest of theirs was thereby varied or changed. It was optional with ■those parties at that time, by taking appropriate proceedings .for that. purpose, to have required the defaulting trustee to *184 invest the fund in the securities specified in the will, or to have made compensation in some other form for the damages, if any, occasioned by his wrongful act; but it was also competent for them to ratify and approve the action of the trustee by accepting the securities held by him as representing the trust fund; and this, we think, was determined by the proceedings taken to release Robert and Ogden Goelet from the duties of trustees under the will. The action of the trustee in making the investments in question was sagacious, and inured to the benefit of all of the parties concerned, and they should not, after long acquiescence in such dealing, be allowed to obtain an advantage by questioning its legality.
But, further than this, we think the securities in which the funds were actually invested by the trustee, until changed by some proceedings taken for that purpose, so far as the beneficiaries were concerned, represented the trust fund, and their earnings, income and increase would, as between the several parties interested therein, be subject to the same rules of division and distribution as though it had been invested and kept on interest in accordance with the terms of the will. The remaindermen could not thereby be deprived of a natural accretion to the fund, however invested, or the life tenant become entitled to an increase, which, if the fund had been lawfully invested, would not have accrued to her. Indeed, in prosecuting this proceeding, the representatives of the life tenant have ratified the acts of the trustee in making the investment in question by treating the unauthorized securities as the corpus of the fund, and claiming their increased value as income earned by the employment of the. capital. In other words, while claiming the advantage to be derived from thé unauthorized act of the trustee, they insist that such act was the efficient cause of transforming what was otherwise an accretion to th® fund going to the remaindermen, into profits going to the life tenant. '
The life tenant was not the sole party interested in the determination of this question, and inasmuch as she, during her lifetime, and the remaindermen also, acquiesced in and ap- . *185 proved the conduct of the trustee in making the investment, her representatives should not now be allowed to acquire an advantage by denying the lawfulness of his proceeding.
The judgment of the court below should he affirmed, without costs to either party.
All concur.
Note on Premium and Depreciation in Securities Held in Trust.
The question here presented is one phase of a subject which constantly presents questions perplexing to counsel, and seriously embarrasses executors and trustees.
The decision in the text settles in a way that must commend itself to the judgment of the profession the question involved in this cased But care should be taken not to assume, without due consideration, that the decision asserts a broader principle than that really involved in the controversy. I have endeavored to state the extent of the decision accurately in the head-note.
It is plain that different instructions in the will may qualify the duty of the executors or the right of the beneficiaries. A large number of the cases on this subject really turn on the peculiar terms in whidh the testator’s will has been expressed.
Where the same general intention is manifested as in the case above reported, the executors need have no difficulty in declining to distribute as income anything more than that which is properly so considered, and in adding to the corpus of the estate or fund profits resulting from increased market value, when such profits are realized upon the conversion, or by the payment off at par, of tlie securities purchased at a discount.
A very different question, however, is presented where the financial operation is the converse of that presented in the case in the text, and securities are purchased at a premium and paid off at par, or converted at a lower rate than the purchase price. Under the doctrine of the case in the text, if an executor who purchased United States 4 per cent, bonds at or near par now converts them, after having distributed the interest as received, the 25 or 28 per cent, premium is not divisible as income, but (unless peculiar words in the will restricting the gift in remainder to a specific sum may be held to qualify or prevent it) go to the beneficiaries in remainder. But if an executor at the same time had purchased 6 per cent, bonds at a premium, and afterwards they were called in and he were compelled to accept par in payment, a very differ *186 ent question is presented. Putting the question most unfavorably for the executor, it may be asked: Has he a right, under such a trust, to purchase at a premium in order to get an enhanced interest for the beneficiaries for life, which must inevitably, in course of time, be paid off or converted at a loss at the expense of the beneficiaries in remainder ? To tak® another illustration, if a mortgage for less than 50 per cent, of the value of first-class business property, and bearing 7 per cent, interest by reason of having been made years ago, before the reduction, of the rate of interest, can be bought at such a premium as to give a better income than the executors can otherwise get on loan, can they purchase for the purpose of such trust at a premium, and distribute the enhanced income thus secured among the life beneficiaries, leaving only the principal of the mortgage to be ultimately realized for the beneficiaries in remainder?
Where executors purchase a rising security, they can distribute the income only, for the case in the text bolds that they are to reserve for the-final distribution as principal the increase of market value.
On the other hand, where they purchase a falling security, taking it at a premium for the sake of the increased income, their only safe course is either to set apart such proportion of the income as may be necessary to meet any question which 'may be raised by the ultimate reduction ct the value of the security, or to appear and account with sufficient frequency and upon due notice to the beneficiaries in remainder, to secure the protection which a decree on accounting alone could give them for thus investing to increase the income of one class of beneficiaries at the expense of the principal belonging to another.
It should be observed, however, that it might be unjust to apply this rule in many cases where executors have acted under the instructions of the will to invest in United States bonds, while on the one hand executors and trustees who are free to invest according to their judgment should not do so in such manner as to incur a loss obviously inevitable at the outset to fall upon one class,- for the sake of a greater benefit to another class of beneficiaries. The case in the text is a strong authority for the cardinal principle that in all cases the terms of the will are to be looked at to ascertain what benefit the testator intended to secure to the respective beneficiaries, and if he directed, or settled rules of law applicable under the clauses in his will require, investment m a manner which may, according to the ordinary course of the market, necessarily give one class a benefit over the other, this must be held in such a case a part of the testator’s intention, or a necessary incident thereto, and not to render the executors liable as for a misdistribution.
Where distribution has already been made in disregard of the precautions here suggested, the power of the executor, with or without the *187 sanction of the court, to withhold from subsequent income what may be necessary to make good the overpayment, is, at least in ordinary cases, well supported by recognized principles.
Construction of the instrument creating the trust.] Testator directed his executors to continue his business for such time after his decease as they should think most advantageous to his estate, and provided for .the division of the whole of his estate, consisting of both real and personal property, into five equal shares, and disposed of them substantially alike by separate provisions, by one of which he devised a share to trustees, 1 ‘ in trust to take possession of the real estate, keep the same in proper and suitable repair, keep the buildings thereon well insured, and to let or lease the same from time to time, and for such term of time, within the lifetime of my said sister Margaret, as to them may seem best, and for the best rent that can he obtained therefor; to keep the personal estate safely and securely invested, and to collect the rents and profits of the real estate, the interest, dividends, and income of the personal estate, and after paying the taxes and assessments, expenses of repairs and insurance, and all other legal and necessary charges and expenses, pay over the residue or net proceeds of said one fifth part of my estate, so given to them in trust as last aforesaid, to my said sister Margaret, semi-annually during her life.” Meld, upon the trustees’ accounting, that losses on credits in the business authorized to be made by the testator, the expenses for replacing appliances used in the business which had worn out, and a horse which had died, and for ordinary repairs, were properly charged against the income of the business and the balance only paid to the life tenant. The court said: “By the terms * residue or net proceeds'1 the testator evidently intended to dispose of such portion of the income as should remain after making proper and legitimate deductions for expenses and losses incurred in the management of the estate and in the conduct oí the business which was intrusted to their charge. Any money, therefore, which might be paid out in the course of the business which was essential to carry it on would be a necessary and proper charge against the income and profits in determining what amount of the residue or net proceeds remains for distribution among the legatees. It would be very difficult to draw a dividing line by which it could be determined that a certain portion of the expenses incurred and disbursements made in the transaction of the business should be made a charge against the capital employed, and another portion against the profits or income. While a case might arise where a large expenditure, as, for instance, the erection of additional buildings, .might be such an improvement of the real estate as to become an addition to the capital employed, yet any ordinary expenditures for repairs •or improvements would not be embraced within any such rule. So also *188 in reference to the wearing out, loss of, or depreciation of personal property, it cannot well be claimed that moneys expended to replace the same should not be deducted from the income received or profits realized. It was not necessary, we think, that the testator should have expressed in his will in more specific terms what items should be deducted, and he evidently meant by the language employed to include all losses and all expenses which were necessarily incurred in the management of the estate and the conduct of the business.” Matter of Jones, N. Y. Court of Appeals, December, 1886.
Testator by his will devised and bequeathed two-fifths of his residuary estate in trust to be put at interest in the names of the trustees as such, in one entire sum, “to be invested in the purchase of stocks or in the pprchase of real estate, at their discretion, with the right to call in and place out again as often as they should think fife, and to pay the interest, dividends, and proceeds arising from the said shares from time o time as they shall be received,” to his two daughters during their lives in equal shares, with remainder over. There was no express requirement in the will that the capital of these two shares should be increased by accumulations arising from the proceeds of the shares themselves. Held, that it was the intention of the testator that all the profits or income of every kind and nature whatsoever arising from these two shares, however invested, should go to the use and benefit of his two daughters. Accordingly, the trustees having bought railroad stock, upon which an annual dividend of 10 per cent, had been declared afld paid to the tenants for life, it was held that they were also entitled to an ektra dividend of 60 per cent, declared upon the stock, but that bonds and certificates received by the trustee from a company created by a consolidation of the other companies in which they held stock, which they had exchanged for the stock of the new company, said bonds representing the difference between the value of the old stock and the new, were to be regarded as capital which belonged to the beneficiaries in remainder. Clarkson v. Clarkson, 18 Barb., 646.
See also, for other examples, Harvard College v. Amory, 9 Pick., 446;. Scholefield v. Redfern, 32 L. J. Ch., 627; Cogswell v. Cogswell, 2 Edw. Ch., 231.
Purchase of securities at a premium.'] A trustee holding a fund, to pay the income thereof for life to one person, and on his death the principal to others, invested it in government bonds at a premium. The bonds were called in and paid off at par before the termination of the life estate, under the option of payment reserved to the government by the terms of the bonds. Held, that if the bonds had been absolutely payable at the time when called in, the loss of premium would hare been chargeable on the income and not on the principal; but the privilege of *189 paying before maturity, being a contingency for which no calculation could be made, the calling in and payment of the bonds was a misfortune to be borne by the principal, to which the excess of loss over what would have been sustained if the bonds had run to maturity must be charged. Farwell v. Tweddle, 10 Abb. N. C., 94.
Where a capital fund, in which there is a person having a life interest, is invested in securities on which a premium is paid, the life tenant is not chargeable with such premium, and where securities so purchased are exchanged for others of a greater value, the life tenant is not entitled to the difference in value between such securities as a part of the income of the fund. Matter of Pollock, 3 Redf., 100.
If a trustee under a will, who holds a fund in trust to pay the income to a person during his life, with remainder over,- makes an authorized investment in bonds of the United States government, or of municipal or railroad corporations, which are payable at a day certain, buying them at a premium, he is not obliged to pay the entire net income to the tenant for life, but is entitled to deduct ' .an amount from the actual interest received on each bond as will, by successive deductions, make good to the capital the amount of premium paid upon the original purchase of the bonds, without regard to the market value of the bonds at the time of making such deductions. “That which is really income from a bond purchased at a price above par, say $120, and payable in ten years, is not the amount received in interest annually, but that amount, deducting therefrom the sum necessary to restore, at the end of the ten years, the $20 premium. .... The premium paid is no more than an advance from capital, which the remainderman is entitled to have repaid, if he is entitled to receive the capital intact.” New England Trust Company v. Eaton, 140 Mass., 532.
Holmes, J., wrote a dissenting opinion in the last ease, relying upon Hemenway v. Hemenway, 134 Mass., 446, two other judges also dissenting.
Where a testator by will directed his executors to invest a specified sum in government bonds, and to “collect the interest and income thereof and pay over the same ” to his wife for life, and also directed that upon her death each of two remaindermen should receive “the one equal half part of said sum directed to be invested as aforesaid,” and the executors bought government bonds at a premium,—Held, in an action brought during the continuance of life estate for a determination of the question upon whom the ultimate loss for the premiums should fall, that the investment, having been made as required by the terms of the will, it must be assumed that the result which might follow was within the contemplation of the testator; that it was not his intention *190 that the life tenant and remainderman should receive, the one less and the other more, than he had given; and therefore that the loss, if any was ultimately incurred on account of the premiums paid, should be borne equally, as near as might be, by the life tenant and remainder-man, and that the life tenant was entitled to the entire interest received on the bonds from which the executors could deduct nothing to make up for the premiums paid. Burgen v. Valentine, 63 How. Pr., 221.
Compare Lord v. Brooks, 52 N. H., 72, where a deed of trust of bank stock gave to the tenant for life “all the dividends as they may from time to time-be declared,” and the capital having become impaired by successive reinvestments in bank stock, rendered necessary by the banks ceasing to do business, etc., it was held that the loss must be borne by the remainderman, and could not be made good out of the dividends.
See also Howe v. Dartmouth, 7 Ves., 137.
Increase in market value of securities.] Where a testator by will directed a specified sum to be invested in bond and mortgage, or in stocks of the United States or of New York State, and “the interest, income, or dividends ” arising therefrom to be paid to the cestui que trust during his life; and the investment in stock of the United States was sold at the termination of the loan at a profit over the purchase price,—Held, that such profit went to the capital of the fund, and not to the life tenant. Townsend v. U. S. Trust Co., 3 Redf., 220.
Compare Scovel v. Roosevelt, 5 Redf., 121; Hooper v. Rossiter, 1 McClel., 527.; Gray v. Darlington, 15 Wall., 63.
Extraordinary dividends, etc.] Testator devised the residue of his estate “in trust to collect the rents, income, and interest, and to pay one equal fourth part ’’ to each of his children for life. Stock in a manufacturing company, which formed part of the residuary estate, having a par value of $50 per share, was-worth in the market at the time of the testator’s death $125 per share, owing to accumulations of surplus profits above the current dividends. After several years, the profits continuing to accumulate, the corporation was recapitalized and new stock issued in place of the old, which had a total market value in excess of the value of the old of $40,500. Held, that the market value of the old Stock at the time of the testator’s death was to be regarded as the principal of the trust fund and the $40,500 as profits to which the legatees for life were entitled.
The court say: “ Where the profits of a manufacturing or banking corporation have been accumulating for many years, until the market value of the stock is more than double its original price, and the owner dies, directing the 1 income ’ of his estate to be applied to particular objects for limited periods, these extraordinary accumulationa are as *191 much a part of his capital as any other portion of Ms estate, and must therefore be regarded, as forming a part of the principal from which the future income is to arise. Wher® the income is given merely for a limited period, and the stock itself is otherwise .disposed of, a bequest of the income is not in any respect like a bequest of the stock itself.” Earp’s Appeal, 28 Penn. St., 368.
The last case was compared and followed in Wiltbank’s Appeal, 64 Penn. St, 256, where testator' by will directed Ms trustees to invest upon real estate security or in stocks, and to pay the income thereof to his wife during her life, and the bank in the stock of which the funds were invested reorganized and declared a dividend, above the par value of 18 per cent., leaving it to the option of the stockholders to take stock in the new bank, adding the dividend of 18 per cent., or to take the same in money, the trustees elected to receive the dividend in the new stock, and it was held, that the 18 per cent payment by the bank must be considered as a dividend, but that as it contained part of what was held as capital when the stock was purchased, so much thereof as was necessary to pay the original investment over and above the par value of the stock taken by the trustees in exchange, should be retained by them, and the residue delivered to the tenant for life. Simpson v. Moore, 30 Barb., 637.
Where a corporation sells part of its original franchise and property, and distributes the proceeds of the same as a dividend among its stockholders, such dividend will be regarded as between a life tenant, entitled “ to receive all issues, dividends, and profits accruing ” of certain shares of the stock, and a remainderman, as capital and not as income. Vinton’s Appeal, 99 Penn. St., 434.
Compare Riggs v. Cragg, 26 Hun, 89; aff’g Cragg v. Riggs, 5 Redf., 82; Knight v. Sidford, 3 Dem., 88.
See,also. Van Doxen v. Olden, 19 N. J. Eq., 176; Lord v. Brooks, 52 N. H., 72; Pierce v. Burroughs, 58 N. H., 302; Bates v. McKinley, 31 Beav., 280; Johnson v. Johnson, 5 Eng. L. & Eq., 164; Price v. Anderson, 15 Sim., 473; Barclay v. Wainewright, 14 Ves., 66; Murray v. Glasse, 17 Jur., 816; Plumbe v. Neild, 6 Jur. N. S., 529; Leland v. Hayden, 102 Mass., 550; Estate of Woodruff, 1 Tucker, 58; Clapp v. Astor, 2 Edw. Ch., 379. .